## W. R. GRACE & CO. v. PANAMA R. CO.

(Circuit Court of Appeals, Second Circuit. May 3, 1926.)

No. 253.

1. **Shipping** ☞142—**Shipper, giving no notice of damage for 70 days, held not in position to urge unreasonableness of provision of bill of lading requiring that demand for damage be made within 10 days after delivery (Shipping Act Sept. 7, 1916, § 18 [Comp. St. §§ 8146a–8146r]; Interstate Commerce Act, § 20, amended by Transportation Act 1920, § 438 [Comp. St. Ann. Supp. 1923, § 8604a]).**

Shipper, who gave no notice of damage until 70 days after receipt of shipment, held not in position to urge that provision in bill of lading requiring claim for damage to be made within 10 days after delivery was not "just and reasonable," as required by Shipping Act, § 18 (Comp. St. §§ 8146a–8146r), in view of Congress' conception of reasonableness as evidenced by Interstate Commerce Act, § 20, amended by Transportation Act 1920, § 438 (Comp. St. Ann. Supp. 1923, § 8604a), requiring notice of damage within 90 days.

2. **Shipping** ☞142.

Objection that claim for damage to goods was not made within proper time *held* not waived by shipowner's rejection of claim on another ground.

**3. Shipping ⟨⇒⟩142—Unseaworthiness held not to preclude shipowner from invoking clause in bill of lading limiting time for making claims for damage to cargo.**

Unseaworthiness of vessel *held* not to preclude owner from invoking clause in bill of lading limiting time within which claims for damage to cargo could be made; the only mention of liability for unseaworthiness in bill of lading being by way of exception in case due diligence was used.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in personam for cargo damage by W. R. Grace & Co. against the Panama Railroad Company. From a decree of dismissal, libelant appeals. Affirmed.

The libel was for damage by sea water caused to a parcel of ox hides shipped from Antofagasta, Chile, to the libelants at New York, carried by the steamer Guatemala to the port of Colon, and thence forwarded by the respondent steamship line to New York. A through bill of lading was issued by the Pacific Steam Navigation Company, the owner of the Guatemala, to whom the hides were delivered. They arrived at the port of Colon in good condition, and were there lifted by the respondent's steamer, Gen. W. C. Gorgas, which delivered them at the port of New York in due course.

It appeared upon the trial that the damage arose from a leak in a lead scupper pipe, leading from the waterways on the main deck down through the 'tween-decks, where the hides were stored, to an opening in the ship's side. This pipe was solidly boxed, and it was impossible to detect the defect, except by taking off the covering. When this was removed at the conclusion of the voyage, a longitudinal crack some twelve inches long was found, the cause of which was and remains unknown.

It appeared that it was customary to take off such coverings only once every four years, and that as the pipe was of lead a hammer test would not reveal the crack. The Gorgas had been a German ship, laid up in the Canal Zone when the war broke out. In 1917 the United States seized her, overhauled her at the Isthmus, and put her in condition for service, but the casings about the pipe were not taken off, nor did it appear how long the pipe had been in place. At Colon, before sailing, the chief officer made an examination of the holds, including the 'tween-decks, and found them in apparently good condition. The pipe had not been observed to leak until the voyage in

question. No severe weather was encountered on the voyage from Colon to New York.

The bill of lading contained the following language: "All claims for damage to goods must be made and the nature and extent thereof fully disclosed in the presence of the agent of the company having the same then in custody before they are removed from the station or wharf. Unless written demand for damage shall be made upon the carrier liable therefor, or upon the carrier which actually delivered the goods within 10 days after delivery, all claims for damage shall be taken to have been waived, and no suit shall thereafter be maintainable to recover the same." The libelant received the hides on April 5, 1920, and gave no notice of, and made no demand for, damages until June 15, when it sent the respondent a letter, followed by an itemized bill on July 20. Respondent took no action until September 22, when it wrote that it was waiting for special reports, and would notify the libelant when these were received. It put off any final action until December 2, when it wrote that the result of its investigation was to fix as the cause of the damage the broken scupper pipe and other pipes found leaking for which it disclaimed responsibility on the ground that this was a peril of the sea. This position it reasserted on July 7, 1921. The libel was filed on April 27, 1922.

The libelant alleged that the injury was not due to a peril of the sea; that the ship was unseaworthy, and that due diligence had not been exercised to make it seaworthy; that the limitation in the bill of lading was invalid, in view of the unseaworthiness of the ship; that it was unreasonable in itself; and that it had been waived by the respondent's recognition of the claim by rejecting it upon another ground.

Bigham, Englar & Jones, of New York City (Oscar R. Houston and Ezra G. Benedict Fox, both of New York City, of counsel), for appellant.

Richard Reid Rogers, of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] The first question raised upon this appeal is of the validity of the limitation clause in the bill of lading quoted above. We have in numerous instances sustained such a clause. The Persiana, 185 F. 396, 107 C. C. A. 416; The San Guglielmo, 249 F. 588, 161 C. C. A. 514; The Verdi,

282 F. 572; The Gen. G. W. Goethals, 292 F. 935; Anchor Line v. Jackson, 9 F.(2d) 543; The Bencleuch, 10 F.(2d) 49. There would be no reason to consider its reasonableness, were it not for the argument that the recent legislation of Congress requires us to look more narrowly at the periods allowed for claims of damage, South, etc., Co. v. Panama R. R., 237 N. Y. 287, 142 N. E. 666. The argument runs as follows:

The respondent is a carrier by water in interstate commerce, under the Shipping Act (39 Stat. 728 [Comp. St. §§ 8146a-8146r]), being engaged in regular carriage between a state and a possession of the United States. By section 18 of that act bills of lading must be "just and reasonable." Under section 20 of the Interstate Commerce Act, as amended by the Transportation Act of 1920 (41 Stat. 494, § 438 [Comp. St. Ann. Supp. 1923, § 8604a]), the period for notice of damage cannot be cut below 90 days, for claims for damage below 4 months, and for suit below 2 years. The requirement that the bill of lading must be reasonable is to be read with the periods so limited by the Interstate Commerce Act (Comp. St. § 8563 et seq.), not literally, but so far as "to escape flagrant disavowal of the conception of reasonable opportunity reflected in the will of Congress." The periods of limitation in the bill of lading at bar do not answer this test, and are therefore unreasonable. Hence they are invalid.

We have only to say in answer that, taking this doctrine at its face, it does not apply to the facts at bar. Should we assume that the periods limited by the bill of lading were too short, and for this reason invalid, we do not think that the respondent is for that reason to be left without any protection against stale claims. At best, the libelant can ask no more than that the period shall be expanded, so as measurably to correspond with the period fixed by Congress, which for notice of claim is 90 days. In fact, the hides were discharged on April 5 and the first notice of damage was on June 15, 70 days later. Had the limitation clause given 70 days to the shipper, we should not suppose that the disparity would be a "flagrant disavowal" of Congress' conception of reasonable opportunity, but that it would have been reasonable, under section 18 of the Shipping Act. Therefore we find it unnecessary to say anything upon the doctrine of South, etc., Co. v. Panama R. R. Co., supra.

[2] The supposed waiver is in our judgment untenable, though we must own that the contrary was held in Oelbermann v. Toyo Kisen Kabushiki Kaisha, 3 F.(2d) 5 (C. C. A. 9). We cannot see how the respondent's failure to raise the objection can create an obligation, otherwise not existing. Had the libelant acted upon the faith of an implied consent to forego the clause, one made while the period still ran, another question would arise; but when, as here, the period was past, and the libelant could do nothing to mend its position, the respondent would not incur any liability, even by the most explicit recognition. The case in this aspect is ruled by Sou. Pac. Co. v. Stewart, 248 U. S. 446, 39 S. Ct. 139, 63 L. Ed. 350, and is within our own rulings in Lehigh Valley Co. v. Providence-Wash. Ins. Co., 172 F. 364, 97 C. C. A. 62, and The Geo. W. Goethals, supra. Anything to the contrary in Grimwood v. Munson (C. C. A.) 273 F. 166, cannot now be considered as law.

[3] The final question is whether, if the ship was unseaworthy, the respondent may still invoke the clause. The libelant's argument rests upon English law, especially upon Atlantic, etc., Co. v. Dreyfus [1922] 2 A. C. 250. As we understand the English cases, the result is as follows: If the charter party or bill of lading contains an express warranty, or the like, that the ship shall be seaworthy, the clause is treated as applicable in limitation of any liability arising under that undertaking, as well as of any other in the document. Bank of Australia v. Clan Line, [1916] 1 K. B. 39. But if it contains no express warranty, or other similar promise, a fortiori if there be no mention of the matter, the clause is treated (as matter of interpretation) as not limiting the warranty implied by the law. Atlantic, etc., Co. v. Dreyfus, supra. The doctrine does not invalidate the clause at all. The case came up in Morris v. Oceanic S. S. Co., 16 Times L. R. 533, of a bill of lading which, like that at bar, mentioned the liability for unseaworthiness, but only to excuse it, if due diligence was used. The judge construed this as equivalent to a promise to use due diligence, and held that the clause applied. His decision was approved in Bank of Australia v. Clan Line, supra, given that construction of the clause, but it was said that the exception ought not to have been read as implying a promise to use due diligence, and that the result was wrong because, in fact, the only liability was that arising under the implied warranty of the common law.

This language would, if applied literally, result in refusing to apply the clause here, because the only mention of liability for un-

seaworthiness is by way of exception in case due diligence be used. We must own that, the whole question being but one of interpretation, the reasoning appears to us, with great deference, somewhat over-refined. In Atlantic, etc., Co. v. Dreyfus, supra, where no mention at all was made of seaworthiness, we can see reason for saying that the clause should be limited to liabilities arising from the stipulations of the bill of lading, which is what we understand that decision to mean. But, where the common-law liability is expressly released upon condition that due diligence is used, it seems to us untenable to refuse to give the clause the same effect which it would have had, had its form been an express promise to be liable if due diligence were not used. Regardless of the fact that in such cases there remains, strictly speaking, only the implied warranty, the exception brings it, we think, as much within the scope of the clause as though it had been otherwise framed.

In general, it seems to us regrettable, when it is possible to avoid that result, to introduce such nice distinctions into documents already complicated enough. Without suggesting that we should not follow the case of Atlantic, etc., Co. v. Dreyfus, supra, if the facts at bar were like it, we think that this case is in fact within the rule of Bank of Australia v. Clan Line, supra, in spite of the discussion in that case.

Decree affirmed.