## ROSENBERG BROS. & CO. et al. v. ATLANTIC TRANSPORT CO. OF WEST VIRGINIA et al.

District Court, N. D. California, S. D. April 16, 1928.

### No. 18957.

**1. Shipping ⬅137—Where vessel was unseaworthy, perils of sea or mismanagement are no defenses, without showing damage to shipment would have occurred despite unseaworthiness (Harter Act [46 USCA §§ 190–195]).**

Where vessel was unseaworthy in respect to chain locks or construction, respondents cannot avail themselves of perils of sea or mismanagement, as defenses in libel for damage to shipment under Harter Act (46 USCA §§ 190–195; Comp. St. §§ 8029–8033, 8035), without showing that damage would have occurred despite existence of factor of unseaworthiness.

**2. Shipping ⬅132(5⅛)—Evidence showed ship was unseaworthy, in that chain locker was not water-tight, resulting in damage to shipment.**

In libel for damage to shipments of canned goods by sea water, which entered hold of vessel in course of voyage during heavy storm, evidence *held* to show that vessel was not seaworthy, in that her chain locker was not water-tight.

**3. Shipping ☞132(6)—Whether vessel is seaworthy is question of fact, to be decided independently of surveys, inspections, and ratings.**

Whether vessel was seaworthy was question of fact, to be decided independently of results of surveys, inspections, and ratings.

**4. Shipping ☞142—Carrier held not liable for damage to shipment, where notice is not given within 10 days after removal, as required by bill of lading.**

Carrier held not liable for damage to shipment of canned goods by sea water, where notice was not given within 10 days after removal of goods, as required by bill of lading, since such provisions are valid.

**5. Shipping ☞132(2)—In libel for damage to shipment, defendants' pleadings held sufficient to show no intention to waive defense, under bill of lading, of failure to sue within five months.**

In libel for damage to shipment of canned goods by sea water, defendants' pleadings held sufficient to show no intention to waive defense of failure to sue within five months, as required by bill of lading, where paragraph of bill of lading containing limitation clause was set forth in full, and dates of filing libels, together with stipulation on file as to such dates. advised court and libelants that counts 9 to 15 were not filed within five-months limitation period.

**6. Shipping ☞142—Bill of lading provision that suit in respect to goods must be instituted within five months after shipment held not unreasonable.**

Bill of lading provision that no suit to recover under bill of lading, or in respect to goods, shall be maintained unless instituted within five months after shipment of goods, notwithstanding carrier may be nonresident or foreign corporation, held not unreasonable and void; there being no evidence indicating any special hardship on libelants arising out of limitation.

In Admiralty. Libel by Rosenberg Bros. & Co. and others against the Atlantic Transport Company of West Virginia and another. Decree for libelants as to counts 1 to 8, and counts 9 to 15 dismissed.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for libelants.

Ira S. Lillick, of San Francisco, Cal., for respondents.

KERRIGAN, District Judge. The libel and supplemental libel contains 15 counts, all for damage to shipments of canned goods by sea water, which entered the No. 1 hold of the steamship Manchuria in the course of a voyage from San Francisco to New York in November and December, 1925. The damage occurred during a heavy storm between Havana and New York. There is no conflict as to the means by which the water gained access to the cargo.

The Manchuria was built in 1904 under a special survey of Lloyds. She is constructed with her chain locker abaft the collision bulkhead. This chain locker is not watertight, and it is conceded that during the voyage in question the chain locker filled with water, which overflowed into the 'tween-decks and found its way into No. 1 hold, damaging the cargo in question, which was stowed partly in the 'tween-decks and partly in No. 1 hold.

Libelants contend that the Manchuria was unseaworthy on account of the construction of her chain locker, and that the damages arose primarily from this cause, precluding respondents from asserting peril of the sea or mismanagement of the vessel as defenses to the libel.

The chain locker extends from the bottom of the ship to the underside of the main deck. Its height is about 41 feet; its breadth athwartships about 11 feet. It is approximately 7 feet fore and aft. It is provided with a suction drainage pipe about 9 inches from the bottom. At the top of the chain locker, where the continuous beams of the main deck pass through, there is an opening. It is through this opening that the water passed after filling the chain locker on the voyage in question. The filling of the locker was due to the washing away of the covering of the openings from the deck into the anchor chain pipes.

The openings from the deck into the anchor chain pipes are oval shaped, about 2 feet long by 18 inches wide. In order to plug up these apertures to prevent seas from washing into the chain locker, two semicircular wooden plugs were used in each pipe, with large grooves cut out of the middle of them to receive the chain. Burlap and cement were put in to make the openings water-tight, and over the whole a canvas covering was lashed, around the chain and around a small flange, which surrounds the opening of the anchor pipes, about 5 inches above the level of the deck. During the storm on the voyage in question the covering over the port chain pipe was completely washed away; the result being the flooding of the chain locker and the damage here complained of.

Libelants urge that the method of closing the anchor chain pipes was such that sea water was reasonably to be expected to find its way into the chain locker, and that, in view of the fact that it took very little water to fill the locker, the Manchuria was therefore unseaworthy, in that the chain locker was not water-tight, exposing cargo stowed in No. 1 hold to the hazard of damage by sea water.

In answer to this respondents point to the fact that the vessel was constructed under special survey of Lloyds, is classed 100-A in Lloyds and A-1E with the American Bureau of Shipping, and has been subjected to repeated surveys and inspections, in none of which has objection to the chain locker construction been made. Respondents assert that the owner of the vessel must be held to have exercised reasonable diligence to make the Manchuria seaworthy, and that the damage to cargo on this voyage arose out of extraordinary weather conditions, coupled with negligence on the part of the ship's personnel, in that they did not examine the locker, nor see to it that it was drained or pumped dry.

[1] The primary question is as to the seaworthiness of the Manchuria. If she was unseaworthy in respect to the chain locker construction, respondents cannot avail themselves of perils of the sea or mismanagement as defenses under the Harter Act (46 USCA §§ 190–195; Comp. St. §§ 8029–8033, 8035), unless they can show that the damage would have occurred despite the existence of the factor of unseaworthiness. The Jeanie (C. C. A.) 236 F. 463; The Asuarca (D. C.) 291 F. 73; The Turret Crown (C. C. A.) 297 F. 766; The Sagamore (C. C. A.) 300 F. 701. Under the facts of this case, respondents can make no such showing, since, admittedly, the damage occurred because the chain locker was not water-tight.

[2, 3] Examination of the evidence leads me to hold that the Manchuria was not seaworthy, in that her chain locker was not water-tight. This is a question of fact, to be decided independently of the results of surveys, inspections, and ratings at Lloyds or with the American Bureau of Shipping. The R. P. Fitzgerald (C. C. A.) 212 F. 678; Newhall v. U. S. (D. C.) 8 F.(2d) 422. In this connection it is interesting to note that the Manchuria does not conform in construction to the later rules of Lloyds and the American Bureau of Shipping, which now require water-tight construction of chain lockers built abaft the collision bulkhead. The Manchuria and her sister ship were 20 years old at the time these rules were enacted, and were not reclassified, because the rules apply to new construction. The rules, however, are of persuasive force in determining the regard or disregard in which this form of construction is held by modern maritime experts.

It is true, as urged by respondents, that standards of ship construction have changed and are changing, and that a vessel which does not conform to the newest ideas of shipbuilding is not unseaworthy on that account alone. Regard must be had to the nature of the defect in question, the damage reasonably to be expected therefrom, the nature of the cargo carried, and so forth. Tested by these standards, I find the chain locker of the Manchuria to make her unseaworthy. It was not water-tight. Water normally found its way into it with the chain, and, in addition, frequently from the defective closing of the anchor chain pipes. It might reasonably have been foreseen that damage to cargo stowed in No. 1 hold might result, as in fact it did. Add to this the fact that it appears that the chain locker could have been made watertight by fitting a collar about the main deck beams, where they pass through the locker, at a nominal cost, approximately $300, and any force which might arise from respondents' argument that the ship should not be tested by the requirements of the recent standards of proper construction is lost.

[4] Since the vessel is unseaworthy in this respect, libelants must recover. It is urged by respondents, however, that libelants' right to recover as to counts 9 to 15 is barred by the statute of limitations, in that suit was not commenced thereon until more than five months from the date of shipment. The bill of lading provides:

"The carrier shall not be liable for any claim whatsoever unless written notice thereof shall be given to this carrier at its port of discharge within ten days after removal of the goods from the wharf or vessel, even though such removal be by customs authorities. No suit to recover under this bill of lading or in respect to the goods shall be maintained unless instituted within five months after shipment of the goods hereunder notwithstanding the carrier may be a nonresident or foreign corporation. Nothing shall be deemed a waiver of the provisions of this section, except a written express waiver, signed by the carrier."

In the answer the failure to give notice of claim in time is specially pleaded. The proof sustains respondents as to the failure to give notice as to the fifteenth count. Since the validity of such provisions as to notice has been repeatedly sustained (The San Guglielmo [C. C. A.] 249 F. 588; The Turret Crown [C. C. A.] 284 F. 439), recovery on the fifteenth count must be denied on this ground.

On the question of the failure to bring suit on the ninth to fifteenth counts within five months from shipment, libelants have by stipulation admitted the dates of commencing suit to be after that time had run, but as-

sert in the first place that this defense has not been sufficiently pleaded by respondents, and, in the second place, that the five-months limitation is unreasonable and void.

[5] On the question of pleading it appears that a more specific pleading of the defense of failure to sue within five months may be desirable. And for this reason respondents may have ten days from date of filing this opinion to amend the answer in this regard, if so advised. The pleadings are sufficient to show no intention to waive this defense, inasmuch as the paragraph of the bill of lading containing the limitation clause is set forth in full, and the dates of filing the libels, together with the stipulation on file as to such dates, advise the court and libelants as well that counts 9 to 15 were not filed within the five-months limitation period.

[6] Libelants urge, however, that this limitation clause is unreasonable, and hence invalid. There is no evidence in the record indicating any special hardship upon libelants arising out of this limitation. In the absence of such a showing, the court cannot say as a matter of law that five months from the date of shipment is an unreasonable limitation period. Indeed, the contrary view is supported by the fact that as to eight counts for damages occurring on this voyage libelants apparently found no difficulty in preparing and filing their libels within the time specified. The Queen of the Pacific, 180 U. S. 49, 21 S. Ct. 278, 45 L. Ed. 419; The Archer, 1925 A. M. C. 1465.

For the reasons above stated, let a decree be entered for libelants as to counts 1 to 8, inclusive, the amount of damages to be determined by reference to be hereafter made, as agreed by the parties prior to the submission of the case. Counts 9 to 15 to be dismissed. Costs to libelants.

So ordered.