## LAGERLOEF TRADING CO., Inc., v. UNITED STATES.

District Court, S. D. New York.
May 16, 1930.

Otto & Lyon, of New York City, for libelant.

Charles H. Tuttle, U. 'S. Atty., and William E. Collins, Sp. Asst. to U. S. Atty., both of New York City.

GODDARD, District Judge.

The libelant seeks to recover for damages to a shipment of 3,311 cartons of safety matches on the respondent's steamship Bird City. The shipment was delivered to the Bird City at Kotoa, Finland, on October 24, 1925, for delivery at Norfolk, Va. The shipper received clean bills of lading, and, upon the arrival of the vessel at Norfolk, many of the matches were damaged, concededly by sea water. The bills of lading provided that suit must be brought within one year after giving notice of the claim. Notice of the claim was given on November 23, 1925; the libel was filed July 18, 1927.

#### Facts.

The matches were stowed in the lazaret over the after peak tank, which upon the ship's capacity plan posted on the Bird City was not designated for the stowage of cargo, but for ship's stores. However, the testimony is that both before and after this voyage this space had, on occasions, been used for the stowage of cargo, and such stowage had been approved by the New York Board of Underwriters. The testimony of an experienced marine surveyor is that the pintle on which the rudder moves was riveted to the after end of the lazaret with a large number of rivets, and that this, with the curved plates rounding out the contour of the stern, tended to produce a certain amount of leakage, and to cause the lazaret to be damp and wet. This seems probable, and I accept it as true. It also appears that subsequently the bulkhead between the lazaret and the hold was removed, and, for the purpose of providing better drainage for this space, two scuppers were added. On the voyage, the Bird City met some heavy seas, and, although she carried a full cargo, the only damage to cargo by sea water was that sustained by this particular shipment in the lazaret.

The libelant urges that the place of stowage was improper and of such a character as to constitute a deviation, and therefore respondent has deprived itself of the benefit of the limitation of one year, in which suit shall be brought as provided for in the bill of lading, and rendered itself liable as insurer for the damage sustained during the voyage.

I do not think that the stowage of this shipment in the lazaret is to be regarded as a deviation. Stowage of cargo on deck without the consent, actual or implied, of the shipper, or the departure of a vessel from the customary course of the voyage, are held to be deviations because they tend to increase the danger to the cargo from the "perils of the sea." Assuming that this shipment was damaged by the sea water which leaked through the plates or rivets, the libelant may have had a good claim against the respondent based upon negligent stowage or the unseaworthiness of the vessel. But clearly the damage in this instance was not sustained as a result of exposure to what is referred to by mariners as "perils of the sea." This shipment suffered from the peril of a leaking vessel, and the shipper might have recovered his loss had it not stipulated in his contract of carriage that it would prosecute any claim for damage within a year and then failed to do so.

The defense urged by the respondent that the suit was not brought within the one-year period is valid. Missouri, Kansas & T. R. Co. v. Harriman, 227 U. S. 657, 33 S. Ct. 397, 57 L. Ed. 690; Schnell v. United States (C. C. A.) 30 F.(2d) 676.

Unseaworthiness does not preclude a shipowner from invoking a clause in the bill of lading limiting time for prosecution of claim. W. R. Grace & Co. v. Panama R. Co. (C. C. A.) 12 F.(2d) 338. See, also, Schnell v. United States, supra.

The libel therefore must be dismissed.