## RUDY PATRICK SEED CO. v. KOKUSAI KISEN KABUSHIKI KAISHA.

District Court, S. D. New York.

July 24, 1935.

See also (D. C.) 1 F. Supp. 266.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and F. Herbert Prem, both of New York City, of counsel), for libelant.

Crawford & Sprague, of New York City (George C. Sprague, of New York City, of counsel), for respondent.

GODDARD, District Judge.

The libelant seeks to recover for loss of its goods on the ground of the respondent's deviation. The Rudy Patrick Seed Company delivered 100 bags of grass seed at Kansas City to the Chicago, Rock Is- land & Pacific Railway Company, for carriage over its lines and the lines of connecting rail carriers, to the port of New York for on-carriage on one of respondent's steamers, to Koenigsberg, Germany. The Chicago, Rock Island & Pacific Railway Company issued a uniform through export bill of lading on the I. C. C. form, dated at Kansas City on November 28, 1930. The pertinent parts of this bill of lading are:

"Uniform Through Export Bill of Lading.

\* \* \* \* \* \* \* \* \* \* \* \*

Order Bill of Lading Original

"The Chicago, Rock Island & Pacific Railway Company in connection with other carriers on the route

"J&P 318–D

"Export Bill of Lading No. 720

"Lot No. ———.

"Contract Numbers FHB 457

"Dated at Kansas City, Mo. this 28 day of Nov. 1930 Received, subject to the classification and tariffs in effect on the date of the receipt of the property described in this bill of lading at Kansas City, Mo. 11–26–30.

"From Rudy-Patrick Seed Co., the following property in apparent good order (contents and condition of contents of packages unknown) marked, numbered, consigned, and destined as indicated below:

"Consigned to order of Rudy-Patrick Seed Co.

"Destination. Konigsberg, Germany

"Route RI.StL.CEI.PM.LV

"Party to whom arrival notice is to be addressed Gustav Scherwitz, Konigsberg, Germany ·\* \* \*

"To be carried to the port (A) of New York, N. Y. and thence by US Navigation to the port (B) Konigsberg, Ger. (or so near thereto as vessel may safely get), and to be there delivered in like good order and condition as above consigned, or to consignee's assigns, or to another carrier on the route to destination if consigned beyond said port (B), upon payment immediately on discharge of the property of the freight thereon, at the rate (inland and/or coastwise) from Kansas City, Mo. to New York, N. Y. of 81 Pd cents per one hundred pounds gross weight, port charges, if any ——— cents, and (ocean and on-carrying) from New York, N. Y. to Konigsberg, Germany, of 80 Pd cents, per One hundred lbs. and advanced charges ——— ·($.———), with all other charges and average, without any allowance of credit or

discount, ——— settlement to be made on the basis of United States gold currency, amount to be paid by receivers at current rate of New York exchange as quoted on the day the vessel is entered at the Custom House at her port of discharge.

"In consideration of the rate of freight herein named, it is hereby stipulated that the service to be performed hereunder shall be subject to the contract terms and conditions, whether printed or written, herein contained, and said terms and conditions are hereby agreed to by the shipper and by him accepted for himself and his assigns.

"Contract Terms and Conditions.

"Any alteration, addition, or erasure in this bill of lading which shall be made without the special notation hereon of the agent of the carrier issuing this bill of lading shall be without effect and this bill of lading shall be enforceable according to its original tenor. If shipment consists of cotton or cotton linters it is mutually understood and agreed that the description of the condition does not relate to insufficiency of or the torn condition of the covering, or to any damage resulting there from, and that no carrier shall be responsible for any damage of such nature. The vessel shall be at liberty to call at any port or ports in or out of the customary route, to tow and to be towed, to transfer tranship, or lighter, to load and to discharge goods at any time, to assist vessels in distress, to deviate for the purpose of saving life or property, and for docking and repairs.

"This bill of lading is not to be used on traffic from a point in the United States destined to an adjacent foreign country.

"Part I.—With respect to the service until delivery at the port (A) first above mentioned it is agreed that—

1. (a) The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto except as hereinafter provided.

"(b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, the authority of law, or the act or default of the shipper or owner, or for natural shrinkage. The carrier's liability shall be that of warehouseman only, for loss, damage, or delay caused by fire occurring after the expiration of the free time allowed by tariffs lawfully on file (such free time to be computed as there-

in provided) after notice of the arrival of the property at destination or at the port of export (if intended for export) has been duly sent or given, and after placement of the property for delivery at the port of export, or tender of delivery of the property to the party, entitled to receive it, has been made. Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner, or party entitled to make such request, or resulting from a defect or vice in the property, or for country damage to cotton, or from riots or strikes. * * *

"2. (a) In issuing this bill of lading this company agrees to transport only over its own line and acts only as agent with respect to the portion of the route beyond its own line.

"(b) No carrier shall be liable for loss, damage, or injury not occurring on its own road or its own water line or its portion of the through route, nor after said property has been delivered to the next carrier.

"3. (a) No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and said port (A). * * *

"(c) Claims for loss, damage, or delay must be made in writing to the carrier at the port of export or to the carrier issuing this bill of lading within nine months after delivery of the property at said port (A), or in case of failure to make such delivery, then within nine months after a reasonable time for such delivery has elapsed; and claims so made against said delivering or issuing carrier shall be deemed to have been made against any carrier which may be liable hereunder. Unless claims are so made, the carrier shall not be liable. * * *

"Part II.—With respect to the service after delivery at the port (A) first above mentioned, and until delivery at the port (B) second above mentioned, it is agreed that—

"1. (a) The vessel shall have liberty to sail with or without pilots; the ocean car-

rier shall have liberty to convey goods in craft and/or lighters to and from the vessel at the risk of the owners of the goods; and, in case the vessel shall put into a port of refuge, or be prevented for any cause from proceeding in the ordinary course of her voyage, to tranship the goods to their destination by any other vessel. * * * "

"3. (b) Notice of loss, damage or delay must be given in writing to the carrier receiving the goods for transportation between port (A) and port (B) within 30 days after the removal of the goods from the custody of such carrier, or, in case of failure to make delivery, within 30 days after the goods should have been delivered, provided, that if such loss or damage is apparent at the time of the removal of the goods from the custody of the carrier, the notice of loss, damage, or delay must be given before the goods are so removed, in which case notation of the loss or damage made on the receipt given to the carrier for the goods shall constitute the notice herein required. Written claim must be filed with such carrier within nine months after giving the aforesaid written notice. Unless such notice is given and claim filed as above provided, the carrier shall not be liable. No suit to recover for such loss, damage, or delay shall be maintained unless instituted within one year after the giving of the written notice of loss, damage, or delay above provided for.

"14. The property covered by this bill of lading is subject to all conditions expressed in the regular form of port bill of lading in use by the steamship company on the date of execution of this document and on file in accordance with the rules and regulations of the United States Shipping Board and/or the Interstate Commerce Commission, but if any of such conditions are in conflict with conditions 1–15 of Part II of this bill of lading, the latter conditions shall control.

"15. If the goods covered by this bill of lading are consigned hereunder beyond the port (B), the transhipment to connecting carrier shall be at the risk of the owner of the goods, but at vessel's expense, and all liability of the ocean carrier hereunder terminates on delivery to connecting carrier.

"Part III.—With respect to the service after delivery at the port (B) second above mentioned, and until delivery at ultimate destination if destined beyond that port, it is agreed that—

"1. In case the regular vessel service to final port of delivery should for any reason be suspended or interrupted, the ocean carrier, at the option of the owner or consignee of the goods, or the holder of the bill of lading, may forward the goods to the nearest available port, this to be considered a final delivery, or to store them at the port (B) second above mentioned at the risk and expense of the goods until regular service to final port of destination is opened again.

2. The property shall be subject exclusively to all the conditions of the carrier or carriers completing the transit. * * *

"In witness whereof the agent signing on behalf of said the Chicago, Rock Island & Pacific Railway Company and of the said Ocean Carrier or Ocean Vessel and her owner, severally and not jointly, hath affirmed to —— Bills of Lading, all of this tenor and date, one of which Bills being accomplished, the others to stand void."

The seed was carried on the lines of the various railway companies to New York, where it was offered to respondent for carriage. After considerable discussion at New York between the respondent's representatives and the delivering rail carrier, the Lehigh Valley Railroad, and after a number of communications between the Lehigh Valley Railroad and the initial rail carrier, the grass seed was stowed on respondent's vessel, Ryufuku Maru, which sailed to Hamburg and there discharged the merchandise and arranged for its transportation from Hamburg to Lubeck by rail, and for transportation by water from Lubeck to Koenigsberg. Upon its arrival at Lubeck after the rail carriage, the grass seed was loaded on board a Baltic Sea vessel, the Carl, which came into collision with another vessel, the Themis, and as a result the Carl and her cargo were lost.

The claim of the libelant is that the transshipment by the respondent of the seed from Hamburg to Lubeck by rail, thence by water to Koenigsberg, instead of shipping by all water route from Hamburg to Koenigsberg, constituted a deviation and made respondent liable for the loss of the merchandise.

■ It is urged by the respondent that Koenigsberg was filled in the bill of lading as port (B) by mistake in place of Hamburg. The respondent steamship company made this change upon its own copy of a bill of lading and requested the shipper's consent to make this change in the export bill of lading, a copy of which had been

sent to respondent. The shipper refused to permit Hamburg to be substituted in the export bill of lading as the port of destination instead of Koenigsberg, and the cargo was received on board respondent's vessel for transportation. As I do not think the evidence warrants the conclusion that a mutual mistake had been made in filling in the port of destination the vessel was, in so far as its relationship with the shipper is concerned, bound by the terms of the through export bill of lading and for carriage of the seed "to Koenigsberg or so near thereto as vessel may safely get." The Esrom, 272 F. 266 (C.C.A.2); The Blandon (D.C.) 287 F. 722; The Muskegon (D.C.) 10 F.(2d) 817. Whether respondent's vessels sailed beyond Hamburg and whether the seed might be transshipped at Hamburg, the contract of carriage clearly indicated transportation by water from New York to Koenigsberg. The evidence is that Hamburg to Koenigsberg by water is a well-known commercial route, and that steamers sail regularly via the Kaiser Wilhelm Canal. Even if the contract for carriage by water on some vessel from New York to Koenigsberg be disregarded on the ground urged by respondent that Hamburg should have been filled in as port (B), the clause "Part III, (I)" in the bill of lading would be determinative and call for water carriage from New York to Koenigsberg.

■ Respondent contends that under its custom it had the option of sending forward the libelant's merchandise from Hamburg to Koenigsberg by either rail or water. Even if it had proven a general custom, which is doubtful, this could not override the terms of a written contract. The Delaware, 14 Wall. (81 U.S.) 579, 20 L.Ed. 779.

■ In transshipping libelant's merchandise by rail from Hamburg to Lubeck, it departed from the contract of carriage and I must hold was guilty of an unjustifiable deviation. In Blumenthal & Co. v. United States (The Brush (D.C.) 21 F.(2d) 798, the owners of a transpacific vessel issued a bill of lading for transportation from Shanghai to Seattle on its vessel and for transshipment at Seattle to a vessel owned by one of two named steamship companies. Upon arrival at Seattle, the vessel owner transshipped the cargo on a vessel other than that owned by either of the companies named in the bill of lading and that vessel was lost. The transpacific owner was held guilty of a deviation. See, also, The Willdomino, 272 U.S. 718, 47 S.Ct. 261, 71 L.Ed. 491; The

Citta Di Messina (D.C.) 169 F. 472; Constable v. National S.S. Co., 154 U.S. 51, 14 S.Ct. 1062, 38 L.Ed. 903; Bazin v. Steamship Co. (C.C.3) Fed. Cas. No. 1,152, 3 Wall. Jr. 229.

■ An unjustifiable deviation renders the vessel owner liable as an insurer for any damage suffered by the cargo. The Willdomino, 272 U.S. 718, 47 S.Ct. 261, 71 L. Ed. 491.

■ The respondent also urges that it is not liable because of the noncompliance by the libelant with the claim clauses of the bill of lading in respect to giving notice of claim within thirty days after the goods should have been delivered and in failing to file written claim within nine months after giving such notice. This defense is not available to respondent, for where a shipowner breaches the contract by an unjustifiable deviation, it may not claim the benefit of restricted clauses in the contract. St. John's Corporation v. Companhia Geral, etc., 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201; The Sarnia, 278 F. 459 (C.C.A.2).

Decree for libelant with the usual reference as to amount of damages.