**UNITED STATES v. WESSEL, DUVAL & CO., Inc.**

**WESSEL, DUVAL & CO., Inc. v. UNITED STATES.**

United States District Court
S. D. New York.
Sept. 29, 1953.

J. Edward Lumbard, U. S. Atty., New York City, Ruth Kearney, Atty., Dept. of Justice, New York City, of counsel, for libelant.

Stanley W. Schaefer, New York City, William M. Kimball, New York City, of counsel, for Wessel, Duval & Co., Inc.

DIMOCK, District Judge.

The United States of America, time charterer of S. S. Edward Rutledge, by its libel seeks recovery from Wessel, Duval & Co., Inc., the bareboat charterer, alleging breach of contract by the bareboat charterer resulting in the stranding of the ship on Hogsty Reef, Bahama Islands. In the first cause of action, libelant seeks the value of libelant's sugar jettisoned, the cost of salvage services, the loss and expense incurred in preserving and protecting libelant's cargo and the loss of use of the ship suffered by libelant. In the second cause of action libelant seeks general average contribution.

By what are denominated set-offs and counterclaims in the answer and by a cross-libel Wessel Duval makes a cross-claim for charter hire unpaid under the time charter, damages for failure to return the vessel in good order as provided in the charter and the United States' share of general average obligation resulting from an earlier stranding of the vessel at Cardenas, Cuba.

There are, in effect, two motions before the court. Wessel Duval moves to dismiss the libel as time barred and the United States excepts to Wessel Duval's cross-claim as time barred.

### The Motion To Dismiss The Libel As Time Barred.

The cargo, except the part which was jettisoned, was discharged at its destination on June 10, 1948. This libel was not filed until September 4, 1951. Wessel Duval moves to dismiss the libel as barred by the one-year limitation in section 3(6) of the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6). No claim is made that the libel is barred by lapse of time unless this one-year limitation applies.

Wessel Duval now concedes that the limitation in the Carriage of Goods by Sea Act applies only to loss of and damage to cargo and that consequently the point is not well taken as to any of the other items of damage.

■ The United States argues that this requires a denial of the motion. I do not agree. Under the prayer for further and different relief I shall treat the motion as bringing on a hearing on an exception to the allegations of the libel claiming cargo loss or damage.

It is conceded that, since the cargo was being carried from one foreign port in Cuba to another foreign port in Germany, the Carriage of Goods by Sea Act does not apply of its own vigor. Wessel Duval contends, however, that it has been made applicable here by incorporation in the charter party.

At the outset I must determine whether parties to a charter party for private carriage between ports outside of the United States may, by their contract, make applicable to their relations the Carriage of Goods by Sea Act, which would otherwise be inapplicable to a charter party or to a voyage between foreign ports.

That Act provides, 46 U.S.C. § 1312, that it "shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade" and that "[n]othing in this chapter * * * shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions: *Provided, however,* That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter * * *, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter * * *." Another section, 46 U.S.C. § 1305, expressly states that the provisions of the Act "shall not be applicable to charter parties". It will thus be observed that the Act disclaims application to carriage other than between United States and foreign ports and disclaims application to charter parties and permits shippers and carriers to make it applicable to carriage between United States ports but contains no such permission to make it applicable to charter parties or carriage between foreign ports such as we are concerned with here.

I do not think that the expression of permission to adopt the law in one case excludes permission to adopt it in others except perhaps in one respect. That is the permission to adopt it as law so that it is effective of its own vigor rather than as mere agreement of the parties.

■ It is hard for me to appreciate the negative argument. All that the parties purport to do is to refer to the terms of a statute for their contract instead of recasting them into contractual language and setting them forth at large in the charter party. Judge Learned Hand in The Westmoreland, 2 Cir., 86 F.2d 96, 97, treated the Harter Act, 46 U.S.C.A. § 190 et seq., which, like the Carriage of Goods by Sea Act, does not in terms apply to contracts of private carriage, as effectively incorporated by reference into a time charter for private carriage. Judge Leibell in United States v. The South Star, D.C.S.D.N.Y., March 24, 1953, held that incorporation of the Carriage of Goods by Sea Act was effective even though the instrument in question was a charter party for private carriage and the cargo was to be transported from Newfoundland to Greece. Judge Coxe, in Mente Co. v. Isthmian S. S. Co., D.C.S.D.N.Y., 36 F.Supp. 278, 285, made a similar holding. See also, as to a charter party, Standard Oil Co. of California v. United States, D.C.S.D.Cal. C.D., 59 F.Supp. 100, affirmed, 9 Cir., 156 F.2d 312; The Temple Bar, D.C.D. Md., 45 F.Supp. 608, and, on appeal, 4 Cir., 137 F.2d 293. On the other hand Petition of United States, D.C.S.D.N.Y., 105 F.Supp. 353, 371, refused to give effect to the incorporation of the Act into a bill of lading for shipment between foreign ports. In accordance with what seems to me the weight of authority and the more persuasive reason, I hold that the parties here might effectively incorporate the Carriage of Goods by Sea Act into the charter party for voyages between foreign ports.

It remains to be seen whether they did so. Article 17 of the charter party is headed "Harter Act and Clause Paramount" and, after providing that it is subject to the Harter Act, continues "It is further subject to the following clause, which is to be included in all bills of lading issued hereunder:

"U. S. A. Clause Paramount

"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further."

The United States contends that, under this form of words, the one-year

limitation of the Carriage of Goods by Sea Act applies only where the shipment is covered by a bill of lading as distinguished from the mere receipt which Wessel Duval is required to issue by Article 11. Wessel Duval, on the other hand, says that the language makes the charter party subject to the U. S. A. Clause Paramount as well as requiring that that clause be included in bills of lading. The argument must necessarily be that the charter party can be thus subject to the U. S. A. Clause Paramount only if such changes are made in that clause by implication as are necessary to make it appropriate, i. e. the words "bill of lading" changed to "charter party" wherever they appear.

The position of the United States is that Article 17 must be read literally and that the sense in which the charter party is "subject" to the U. S. A. Clause Paramount is that the relations of the parties will differ if, and to the extent that, bills of lading, as distinguished from receipts, are issued for the cargo.

This seems to me to be a strained, rather than literal, reading of Article 17. That article does not say that the charter party is subject to variation by the issuance of bills of lading containing the U. S. A. Clause Paramount. It says that it is subject to the U. S. A. Clause Paramount and that all bills of lading shall contain it.

I think that a consideration of all of the terms of the charter party in the light of the circumstances will show that Wessel Duval's construction of Article 17, though not a literal one, is correct.

Article 4 of the charter party provides that the "vessel shall be used in transporting for Charterer's account cargo owned or controlled by the U. S. Government". Article 11 directs in subdivision (a) that the "Master shall sign a manifest or receipt acknowledging receipt of the cargo in apparent good order and condition, or noting specific exceptions thereto." It goes on in subdivision (b) to say that "[a]ny receipt signed by or on behalf of the Master or Agent shall be without prejudice to the terms, conditions and exceptions of this charter and subject to all of them."

In referring to the document to be issued to the charterer as a "receipt or manifest" rather than a "bill of lading" the charter party recognizes the nature of the instrument at the stage of issuance.

■ As the expression is generally used, a bill of lading is a document which serves both as a receipt and a contract, The Delaware, 14 Wall. 579, 596, 20 L.Ed. 779, but where the shipper is also the charterer, the contractual element does not arise until the document is transferred. As Judge Wallace said in The Fri, 2 Cir., 154 F. 333, 336, quoting Carver, Carriage by Sea:

"The usual practice is for the master, or agent of the shipowner, to give bills of lading for the cargo, although it may be shipped under a charter party. When the charterer himself ships the goods these bills of lading operate as receipts for them, and also as documents of title which he can negotiate, and thereby constructively transfer possession of the goods. But they do not, as between the shipowner and the charterer, operate as new contracts, or as modifying the contract in the charter party. Where the bill of lading has been transferred for value to third persons who are strangers to the charter party, its terms become very important. It then constitutes an undertaking on the part of the shipowner with the holders, which is independent of the charter party, except so far as that is expressly incorporated in it."

■ It was thus quite proper in the charter party here under discussion to refer in Article 4 to the document that would be issued to the United States as a "receipt" and yet to direct in Article 17 that the document should refer to itself as a "bill of lading". A document which would be but a "receipt" for the time charterer, whose relations with Wessel Duval would be fixed by the charter party, would be a "bill of lading" for the time charterer's transferee, whose relations with Wessel Duval would be fixed by the transferred document.

It is true that, if this nomenclature had been strictly observed throughout the charter party, Article 17 would not have said that the U. S. A. Clause Paramount was to be included in all "bills of lading" but rather that it was to be included in all "receipts". As appears, however, from the usage in the quotation from The Fri, 2 Cir., 154 F. 333, supra, there is support for calling the instrument a "bill of lading" before it becomes a contract. The use of the expression "bill of lading" in that sense was appropriate in Article 17 because of the necessary use of the same expression to describe the same document as part of the text of the clause which was to be inserted within it.

Whatever doubt may be cast upon the interpretation by the use in Article 17 of the expression "bill of lading" to describe the document before transfer, the rationality of the result of Wessel Duval's interpretation and the capriciousness of that of the United States lead me to say that all shipments, and not merely those which are covered by a special form of bill of lading, are subject to the Carriage of Goods by Sea Act. The apparent purpose of Wessel Duval was to have the Carriage of Goods by Sea Act apply to its relations with the United States and with anyone to whom the United States might transfer the "receipts". To make sure that the Act would apply to the transferree when, by transfer, the receipt became a full fledged bill of lading, the charter party required that the "bill of lading" should contain a clause expressly subjecting it to the Act. The omission of the clause from the straight bills of lading issued in this case does not cast doubt on my interpretation since the application of the Carriage of Goods by Sea Act to the relations between the United States and Wessel Duval was fixed under the terms of Article 11(a) of the charter party, supra, even if the bills did not mention it and the form of the bills prevented the possibility that a transferee might obtain different rights.

I cannot conceive of any reason why the parties should have wished to make a provision for application of the Carriage of Goods by Sea Act that would depend for its operation on whether or not a bill of lading was issued for the particular shipment. According to the theory of the United States, the adoption of the Carriage of Goods by Sea Act is mandatory if a bill of lading is issued. Under its theory, which distinguishes a "receipt" from a "bill of lading" as those terms are used in the charter party, the issuance of a bill of lading would be an act of grace by Wessel Duval. Since the issuance of a bill of lading would be a matter of grace, all of its terms would be the subject of agreement at the time and, if Wessel Duval wanted to have the Carriage of Goods by Sea Act apply, all it would have to do would be to refuse to issue the bill of lading under any other terms. To provide in advance the terms of a bill of lading which could only be obtained as a favor would not only be unusual but ineffective.

I hold that the parties adopted the Carriage of Goods by Sea Act as part of the charter party. See Standard Oil Co. of California v. United States, D.C.S.C. Cal., 59 F.Supp. 100, supra, where the Carriage of Goods by Sea Act was held to have been incorporated in a charter party which simply required that the bills of lading issued thereunder should take effect subject to that Act which should be deemed to be incorporated therein.

Besides the claim that the charter party's incorporation of the Carriage of Goods by Sea Act was limited to cases where bills of lading were used, the United States urges that the conduct of Wessel Duval, the bareboat charterer, was such as to deprive it of the benefits of the one-year limitation in the Carriage of Goods by Sea Act. The libel alleges that the stranding was due to unseaworthiness, failure to use due diligence to make the vessel seaworthy, failure properly to man, equip and supply the vessel or to use due diligence to do so, failure to have on board proper charts and notices to mariners and failure to use due diligence to obtain them, and

failure to supply an adequate number of mates.

No case was originally cited for the proposition that such conduct would deprive the bareboat charterer of the protection of the limitation in the Carriage of Goods by Sea Act, but, in a reply brief, the theory is advanced that such conduct amounts to a deviation.

The argument is that if the alleged breaches of duty on the part of Wessel Duval amounted to a deviation then Wessel Duval would be deprived of the protection of the one-year limitation in section 3(6) of the Carriage of Goods by Sea Act. That provision reads: "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered". Those words "in any event" may well result in preserving this statutory limitation even though the ship has been guilty of a deviation. Here, however, the Act has effect only as an agreement of the parties; if the agreement that, unless suit is brought within one year, the ship shall be discharged goes by the board when the ship is guilty of a deviation, the agreement that unless suit is so brought the ship shall be discharged "in any event" will go by the board too. The words "in any event" have no greater sanctity than the rest of the clause.

■ The authorities indicate and I hold that deviation does deprive the ship of the protection of a provision in the contract of carriage limiting the time for suit or claim. Sidney Blumenthal & Co. Inc., v. United States, D.C.S.D.N.Y., 21 F.2d 798, not reviewed by the appeal reported 2 Cir., 30 F.2d 247; Rudy Patrick Seed Co. v. Kokusai Kisen Kabushiki Kaisha, D.C.S.D.N.Y., 12 F.Supp. 727, reversed on other grounds 2 Cir., 85 F. 2d 17; General Electric Co. v. Argonaut S. S. Line, D.C.E.D.N.Y., 7 F.Supp. 710; but see Singer Hosiery Mills v. Cunard White Star, 199 Misc. 389, 102 N.Y.S.2d 762.

I must therefore decide whether the conduct of Wessel Duval as alleged constituted a deviation. All the cases where conduct has been held to constitute deviation are aptly categorized in the list of headings in 80 C.J.S., Shipping, § 144, p. 1007 et seq.: abandonment of voyage, delay, departure from route, dry-docking, repairs, failure to deliver or misdelivery, overcarriage, improper stowage, care and custody of cargo, unauthorized mode of transportation and towing.

■ The United States' theory might be that there was a warranty of seaworthiness in the charter party, that the alleged unseaworthiness constituted a breach of the contract of carriage and therefore unseaworthiness could amount to a deviation. Unseaworthiness is excused under the Carriage of Goods by Sea Act, which is incorporated in the charter party, where the owner has used due diligence to make the ship seaworthy. 46 U.S.C. §§ 1303–4. I am not aware of any case holding that a contract term providing for such an excuse would be invalid. Since unseaworthiness not caused by lack of due diligence cannot be a breach of the contract, it cannot constitute a deviation. The United States is therefore left only with the claim that failure to use due diligence to make the ship seaworthy can amount to a deviation. Nothing like such conduct on the part of a carrier has ever been given the effect of deviation. The farthest that I have found the courts going away from the original conception of a departure from the ship's route is their acceptance of a breach of contract for special stowage of cargo as a deviation. Pioneer Import Corporation v. The Lafcomo, 2 Cir., 159 F.2d 654; St. Johns N. F. Shipping Corp. v. S. A. Companhia Geral, Etc., 263 U.S. 119, 124, 44 S.Ct. 30, 68 L.Ed. 201; but see statement by Judge Learned Hand in Farr v. Hain S. S. Co., 2 Cir., 121 F.2d 940, 944, that "a deviation is no more than a breach of the contract of carriage." Negligent stowage of goods, on the other hand, does not constitute a deviation. Lagerloef Trading Co. v.

United States, D.C.S.D.N.Y., 43 F.2d 871; Petition of Isbrandtsen Company, 2 Cir., 201 F.2d 281, 286. I hold therefore that no deviation is alleged in this case and hence that there is nothing alleged which would deprive Wessel Duval of the benefit of the one-year limitation on the ground of deviation.

Unseaworthiness, however, has been given some of the consequences of a deviation.

There are conditions where unseaworthiness deprives a carrier of the benefit of contractual provisions relieving the carrier from liability for negligence. As Judge Learned Hand pointed out in Farr v. Hain S. S. Co., 2 Cir., 121 F.2d 940, 945, supra, where the contract provides that the carrier shall not be liable for the consequences of any negligence if the owner has been diligent to make the ship seaworthy, this exception will not protect the carrier if the ship is unseaworthy because of failure to have the latest charts and that unseaworthiness causes a stranding. The rule is otherwise, however, where the exception is a limitation on time for suit or claim rather than absolution from liability for any negligence. Where the carrier binds himself to exercise due diligence to make the ship seaworthy and his failure to do so results in damage, that failure does not deprive him of a limitation of time for suit or claim for which he has contracted. W. R. Grace & Co. v. Panama R. Co., 2 Cir., 12 F.2d 338. There the Court found that the libelant had not made claim within a period required by a clause in the bill of lading. The bill of lading mentioned liability for unseaworthiness but only to excuse it in case due diligence were used. The libelant alleged that the ship was unseaworthy and that due diligence had not been exercised to make it seaworthy. On the trial it appeared that the libelant's goods had been damaged by sea water from a leak in a lead pipe which had not been examined for at least six years in spite of a custom to make such examination every four years. The District Court dismissed this libel. The Court of Appeals affirmed the dismissal, holding that the respondent was protected by the contractual limitation upon the time for making claim. See also Rosenberg Bros. & Co. v. Atlantic Transport Co., D.C.N.D.Cal.S.D., 25 F.2d 739; Lagerloef Trading Co. v. United States, D.C.S.D.N.Y., 43 F.2d 871, supra.

The instant case is indistinguishable from W. R. Grace & Co. v. Panama. The charter party incorporates by reference the provision of the Carriage of Goods by Sea Act that the carrier shall be bound to exercise due diligence to make the ship seaworthy. 46 U.S.C. § 1303. The Act goes on to provide that the carrier shall not be liable for loss due to unseaworthiness "unless caused by want of due diligence". 46 U.S.C § 1304(1). It includes the one-year limitation on suit. 46 U.S.C. § 1303(6). The libel alleges that the carrier did not use due diligence to make the ship seaworthy and that by reason of that unseaworthiness the cargo was damaged. The claim for that damage is barred by the limitation just as it was in W. R. Grace & Co. v. Panama, supra.

Exception is sustained to the libel in so far as it purports to state a claim for cargo loss or damage.

### The Exceptions To The Cross-Claim As Time Barred.

The United States, by an exceptive allegation, to the use of which no objection is made, states that the time charter expired in September 1949. Since the answer and cross-libel were filed on April 1, 1952, and the Suits in Admiralty Act, 46 U.S.C. § 745, made applicable by 46 United States Code section 782 to the Public Vessels Act, requires that a suit in admiralty against the United States must be brought within two years after a claim arises, the United States contends that the cross-claim is time barred. No claim is made that the cross-claim is barred by lapse of time unless the two-year limitation applies.

One answer given by Wessel Duval should be dealt with at this point. Wessel Duval calls attention to Article 24 of the charter party, "Disputes Clause". It

provides that "all disputes concerning questions of fact which may arise under this contract * * * shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail a copy thereof to the Contractor at his address shown herein. Within 30 days from said mailing the Contractor may appeal in writing to the Secretary of War, whose written decision or that of his designated representative or representatives thereon shall be final and conclusive upon the parties hereto."

■ Wessel Duval urges that this clause sets up a condition precedent to suit and that the time of limitation of suit does not begin to run until the condition has been satisfied. In this Wessel Duval is in error. The disputes clause is a bar to suit, not a condition. In any case covered by the clause neither side can recover in court unless the other side consents to the jurisdiction. If Wessel Duval wishes to submit to a court a controversy covered by the disputes clause, on the theory that the United States either has consented to such submission by submitting to the court its side of the dispute or will consent to such submission, Wessel Duval must submit the controversy to the court within the time limited as though there were no right or duty to submit the controversy to the Contracting Officer.

Wessel Duval, to succeed, therefore, must point to some other reason why the delay of more than two years is not fatal to its cross-claim.

■ As adding up to such a reason it correctly says that the limitations provided by the Suits in Admiralty Act and the Public Vessels Act are confined to suits brought under those acts and asserts that the cross-claims here interposed are not based upon those acts. To support that assertion it advances the proposition that the United States by bringing this suit for cargo damage waived its sovereign immunity with respect to the cross-claim here asserted for charter hire unpaid under the time charter, damages for failure to return the vessel in good order as provided in the charter and the United States' share of general average obligation resulting from an earlier stranding of the vessel at Cardenas, Cuba. It is part of Wessel Duval's theory that where the United States sues on an obligation under a charter party its sovereign immunity is waived with respect to all cross-claims arising under the same charter party. This theory cannot be established. The case cited in support of it, United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313, is inapplicable. There the United States objected that there was no statute under which it had accepted liability for a marine collision as a result of which a decree had been entered against it on a cross-libel. It was held, however, that the fact that the United States had joined in the suit carried with it an acceptance of liability. Justice Holmes cited the rule of apportionment of damages and said, 266 U.S. at page 340, 45 S.Ct. at page 113, "The libel in such a case is like a bill for an account, which imports an offer to pay the balance if it should turn out against the party bringing the bill."

In United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888, an attempt to apply the rule of the Thekla case to a situation where no collision was involved was unsuccessful.

■ Wessel Duval puts forward the Tucker Act, 28 U.S.C.A. § 1346, as a basis for the assertion of a counterclaim without involving the Suits in Admiralty Act and the Public Vessels Act with their two-year limitations. Under the decisions in this Circuit, however, the Tucker Act cannot serve as authority for a counterclaim against the Government. United States v. Nipissing Mines Co., 2 Cir., 206 F. 431; United States v. Double Bend Mfg. Co., D.C.S.D.N.Y., 114 F.Supp. 750.

The inapplicability of the Thekla doctrine and the Tucker Act have, however, nothing to do with set-offs where no affirmative judgment is asked. The Act of March 3, 1797, 1 Stat. 512, 515, R.S. § 951, 28 U.S.C. § 774 [now § 2406], has been interpreted to allow set-offs to the

amount of the Government's claim where the Government voluntarily sues, United States v. Wilkins, 6 Wheat. 135, 144, 5 L.Ed. 225, although the act is couched in the form of a prohibition against the allowance of a set-off unless the claimant first proves that the claimed set-off has been disallowed, in whole or in part, by the General Accounting Office. To take advantage of such a set-off Wessel Duval would not need the aid of the Suits in Admiralty Act or the Public Vessels Act and would therefore be free of their two-year restriction. Wessel Duval points out that the claim under the Act of 1797 need not arise out of the same transaction on which the United States sues, United States v. Wilkins, 6 Wheat. 135, supra, United States v. Fillebrown, 7 Pet. 28, 48, 8 L.Ed. 596, and that the United States may not have the set-off stricken on the ground that the answer fails to allege that the claims were rejected by the General Accounting Office. United States v. Maguire Industries, D. C.S.D.N.Y., 99 F.Supp. 326; United States v. Standard Aircraft Corp., D.C.S D.N.Y., 16 F.2d 307.

■ There is another ground on which I think Wessel Duval's cross-claims can be allowed despite the two-year limitations. Where the United States sues, the defendant, without relying on any other waiver of sovereign immunity, may recoup by counterclaim, to the extent of any amount awarded the United States, any damages which have arisen out of the same transaction or contract or subject of action, United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, supra; United States v. U. S. Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894. Professor Moore in 2 Moore's Federal Practice, par. 13.28, p. 75, limits this to "a compulsory counterclaim" which is one which arises out of the "transaction or occurrence" that is the subject matter of the opposing party's claim. Even if the classification is so limited, however, I think that the cross-claims here asserted qualify for inclusion. Eastern Transportation Co. v. United States, 2 Cir., 159 F.2d 349.

■ Wessel Duval's cross-claim, therefore, whether asserted in the answer or cross-libel or both, will be permitted to stand, as a counterclaim by way of recoupment against any amount awarded to libelant, to the extent of the amount of that award only, and as a set-off to the same extent.