John P. FLANAGAN, Libelant,

v.

THE Scow H. F. GILLIGAN, her engines, boilers, apparel and furniture, and New York Trap Rock Corporation and Red Star Towing & Transportation Corporation, Respondents.

United States District Court
S. D. New York.

Jan. 30, 1959.

---

Henry Isaacson, New York City, for libelant.

Foley & Martin, New York City, for respondent, Red Star Towing & Transportation Corp., James S. Reardon, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

Respondent Red Star Towing & Transportation Corporation excepts to the count alleged against it in the third amended libel, asserting that it fails to state a claim since it does not allege facts showing that libelant was performing "crew work" in the service of respondent's vessel.

Libelant is a barge captain. He was employed, not by respondent Red Star, but by respondent New York Trap Rock Corporation aboard its scow Gilligan. The Gilligan was one of four barges under tow by respondent Red Star's tug Boston in New York waters.

The second count in the third amended libel is against respondent Red Star only and includes the following allegations:

Libelant was injured on December 14, 1953 in the "course of his employment" while, during the course of a storm, and while the scow was rolling and pitching, he was attempting to attract the attention of the captain of the tug Boston. As scow captain aboard the Gilligan

libelant performed services to the tug Boston in acting as "lookout" for the tug as well as the scow, in aiding navigation of the tug, in handling tow lines from the tug to the scow, being required to go aboard the tug to assist in connecting the tow lines and in keeping the scow a safe and proper distance from the tug. These were services that "are traditionally performed by crew members". The accident was caused by "unseaworthiness" of the Boston consisting of the failure of respondent Red Star to provide a lookout man aboard the tug, to supply sufficient and adequate men aboard her, to employ a competent, efficient and reliable tug captain, and to promulgate adequate rules and regulations.

The question presented is whether the warranty of seaworthiness extends from a tug owner to a seaman who is not in his employ and who is injured aboard a scow in tow of the tug under the circumstances alleged.

The first and second amended libels were dismissed as against respondent Red Star for failure to state a claim. Originally libelant filed a libel against his employer New York Trap Rock Corporation and the scow Gilligan, charging in a single cause of action negligence and unseaworthiness. Subsequently, on September 17, 1957, more than three years after the date of his alleged injuries, he filed an amended libel which contained a new allegation adding Red Star and its vessel the tug Boston as respondents. Except for this and an allegation setting forth the corporate existence of Red Star and its place of business, the substance of the original libel remained unchanged.

Respondent Red Star excepted to the amended libel and its exceptions were sustained by Judge Edelstein, 158 F. Supp. 393. He held that any claim of negligence against Red Star was barred by an unexcused delay of more than three years under the assimilated New York statute of limitations (New York Civil Practice Act, § 49, subd. 6), and that the only claim that was not barred was for unseaworthiness. He held that the amended libel alleged no basis for a claim against Red Star on that theory. However, he granted libelant leave to file a further amended libel pleading facts showing special circumstances excusing the delay in not filing his libel on the negligence count within three years,[1] or, in the alternative, setting forth a claim against Red Star based on unseaworthiness.

Libelant then served a second amended libel attempting to allege a cause of action against Red Star based on unseaworthiness in an effort to obtain the benefit of the six year New York statute of limitations and to throw the burden of showing prejudice upon the respondent.[2]

The second amended libel contained allegations substantially the same as those now made except that there was no allegation that libelant rendered any services aboard or to the tug Boston. Judge Weinfeld in his opinion of October 10, 1958, D.C., 170 F.Supp. 793, sustained Red Star's exceptions to the second amended libel. He held that the warranty of seaworthiness could not be extended to a seaman who was not in the employ of the owner of the vessel in the absence of a showing that he was performing "crew work" in the service of the vessel. Such a warranty could not be sustained on the theory that the tow was in effect a part of the tug since it had no independent choice of movement but was under the tug's sole direction and control. The absence of allegations as to the nature and extent, if any, of services performed by libelant to the tug was therefore fatal.

However, Judge Weinfeld said:

"It may well be that the services required of him [libelant] were such

1. Redman v. United States, 2 Cir., 176 F. 2d 713.

2. See New York Civil Practice Act, § 48, subd. 3. See, also, Le Gate v. The Panamolga, 2 Cir., 221 F.2d 689; Oroz v. American President Lines, 2 Cir., 259 F.2d 636.

as to bring him within the protection of the seaworthiness doctrine."

Libelant was therefore granted leave to serve a further amended libel "if the facts warrant" which he has now done.

The question is whether the added allegations in the third amended libel as to the services performed by libelant for the tug Boston cure the defect held to be fatal by Judge Weinfeld in sustaining the exceptions to the second amended libel. In my view they do.

 It is now well settled that a shipowner may be liable in unseaworthiness for incompetent or inadequate personnel aboard his vessel as well as defects in the hull and gear. Keen v. Overseas Tankship Corp., 2 Cir., 194 F.2d 515, certiorari denied 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363; Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354. It is also settled that the owner's liability for unseaworthiness extends to those "doing a seaman's work and incurring a seaman's hazards, although not in the employ of the owner of the vessel". Imperial Oil, Ltd. v. Drlik, 6 Cir., 234 F.2d 4, 8. Judge Hand states the test to be "whether the work is of a kind that traditionally the crew has been accustomed to do * * *." Halecki v. United New York & New Jersey Sandy Hook Pilots Ass'n, 2 Cir., 251 F.2d 708, 711, certiorari granted 357 U.S. 903, 78 S.Ct. 1149, 2 L.Ed.2d 1154.

In so far as the libelant alleges that he was acting as a "lookout" for the tug Boston he may fit within the contours of "crew work" as defined by these cases. And it is no bar to recovery for unseaworthiness that libelant was not employed by the respondent or a member of its crew. A breach of duty is asserted in the allegation that the crew of the Boston was inadequate and that the owner failed to provide a competent captain.

Having thus placed himself within the class to which the duty of seaworthiness may extend, and having alleged a breach of that duty, the fact that the injury was sustained aboard the barge does not render the pleading insufficient. At the trial the physical location of the libelant may be determinative of whether in fact the acts he was performing were "crew work" for the Boston.

However, as a matter of pleading the libelant has brought himself within the present doctrine of seaworthiness which appears to be so rapidly expanding. Halecki v. United New York & New Jersey Sandy Hook Pilots Ass'n, supra. Whether there is a sufficient connection between the Boston and libelant's injury to justify recovery is now a matter of proof. See Fredericks v. American Export Lines, 2 Cir., 227 F.2d 450, 454 certiorari denied 350 U.S. 989, 76 S.Ct. 475, 100 L.Ed. 855.

The exceptions to the third amended libel are therefore overruled.

So ordered.