**CERRO SALES CORPORATION, a corporation, Plaintiff,**

v.

**ATLANTIC MARINE ENTERPRISES, INC. and Maritime Associates, Inc., Defendants.**

**No. 69 Civ. 3231.**

United States District Court,
S. D. New York.

Nov. 10, 1975.

Vincent & Berg, New York City, for plaintiff; Frank M. Marcigliano, James F. Campise, New York City, of counsel.

Poles, Tublin, Patestides & Stratakis, New York City, for defendants; Melvin J. Tublin, New York City, of counsel.

METZNER, District Judge:

This is an action for cargo loss, transshipment expenses and related damages, and for indemnity for costs of salvage, stemming from a ship fire at sea. Trial was held, without a jury, solely as to liability of the defendants.

On May 15, 1968, plaintiff Cerro Sales Corporation (Cerro) entered into a voyage charter party with defendant Atlantic Marine Enterprises, Inc. (Atlantic), owner of the S.S. North America, to convey a cargo of copper concentrates from San Fernando, in the Philippines, to Callao, Peru. Atlantic is a Liberian corporation and the North America is a Liberian flag vessel. The North America was managed and operated by Atlantic's agent, defendant Maritime Associates, Inc. (Maritime).

The charter party provided that the Carriage of Goods by Sea Act (COGSA) applied to the charter (U.S.A. Clause Paramount), incorporated the York-Antwerp Rules of 1950, and included the "New Jason Clause."

On or about June 1, 1968, the North America sailed from San Fernando for Callao. After a stopover for fuel in Honolulu, Hawaii, on or about June 20, the ship proceeded toward its destination. At 4:25 A.M. on June 23, some 600 miles from the Hawaiian Islands, a fire broke out in the boiler room of the North America. The fire started due to the carelessness of a fireman who improperly failed to secure a valve while changing a burner on the starboard boiler. As a result, heated oil spurted onto hot surfaces of the boilers igniting the oil and causing the fire. Fire-

fighting efforts, which will be discussed below, proved unsuccessful, and approximately one hour after the outbreak of the fire, the captain and crew abandoned ship in rough seas. The captain himself fell into the sea. Two seamen were lost.

About 5:00 P.M. on June 23, the S.S. St. Paul, at the direction of the U.S. Coast Guard, rescued the crew members from the lifeboats. The North America was still burning at the time. On June 24, the St. Paul tried to take the North America in tow but was unable to do so due to heavy seas. The St. Paul then returned with the crew to Honolulu, leaving the North America afloat but without power.

On June 28, 1968, the tug Malie set out to rescue the North America, and brought the ruined ship into port on July 5, 1968.

In the salvage actions that followed in Hawaii, the two salving vessels and their crews were awarded in excess of $230,000 in salvage against Cerro, based on a cargo value of $1,850,000. As the North America was found to be worth only $14,000, this was the limitation of owner's contribution.

Eventually the cargo of copper concentrates, in large part undamaged, was transshipped at plaintiff's expense, and arrived at Callao on October 26, 1968. Unloading was completed on October 31. The complaint in this action was filed on July 23, 1969.

At the trial plaintiff attempted to establish that due to the knowledge, neglect and design of Maritime and Atlantic, the fire broke out, and the improperly trained crew and improperly equipped ship made effective fire-fighting impossible, thus making the shipowner and its agent liable to the plaintiff for damages and indemnity.

Defendants claim that the damages for cargo loss and transshipment are time-barred, 46 U.S.C. § 1303(6), that since there was no allegation of payment of salvage, and, in fact, salvage has not been paid by Cerro, the indemnity action has not accrued, and that the facts, as proved, are insufficient to support a finding of liability on the part of defendants under the "Fire Act," 46 U.S.C. § 182, and the fire exception of COGSA, 46 U.S.C. § 1304(2)(b). Defendants further argue that defendant Maritime is an improper party defendant and that, in the event of liability, such liability should be limited to ship plus freight pursuant to 46 U.S.C. §§ 181–88.

## Statute of Limitations

Under Section 1303(6) of Title 46, claims for cargo loss or damage under COGSA are barred if not brought "within one year after delivery of the goods or the date when the goods should have been delivered . . . ." It is clear from the evidence, and not disputed by the proof, that the vessel, had all gone well, should have arrived at Callao on July 11, 1968. The cargo should have been unloaded by July 16. Accordingly, if the "should have been delivered" standard applies to these facts, the claims for damages to cargo are time-barred.

However, plaintiff advances two arguments against this conclusion. The first is that the goods were actually delivered at Callao on October 31, and that this date starts the statute running. The delivery eventually made at Callao was made under a separate and distinct bill of lading and separate from the contract of carriage sued upon here. In such cases the delivery date is of no importance and the limitations period runs from the date the goods should have been delivered. *Western Gear Corporation v. States Marine Lines, Inc.,* 362 F.2d 328 (9th Cir. 1966).

Cerro's second argument is that it was informed by a letter dated July 26, 1968, of the frustration of the voyage at Honolulu, and asked to take delivery there. Plaintiff urges that it was at this date that the statute began to run. It claims that the return to the port at Honolulu constituted a reasonable deviation under the "liberty clause" of the charter party, and that the cargo was not actually

relinquished until July 26, when defendants requested that Cerro take possession in Hawaii. Under this argument, the goods were "delivered" by the defendants under the existing contract, and therefore the "should have been delivered" clause is inapplicable.

Few courts have interpreted the meaning of the term "delivery" in Section 1303(6). In *Orient Mid-East Lines, Inc. v. A Shipment of Rice*, 496 F.2d 1032 (5th Cir. 1974), on facts analogous to the case at bar, the court assumed that the date of the completion of discharge was "delivery" for the purposes of Section 1303(6). In that case, a shipment of rice bound for Vietnam was never delivered at its destination due to destruction of the ship's high-pressure turbine blades. The ship was towed to the Panama Canal and eventually to its port of origin in Beaumont, Texas. The goods were discharged from the ship there, as a decision was made to scrap the vessel. The court ruled that a counterclaim interposed eighteen months after the discharge was barred by Section 1303(6). The court did not discuss the applicability of the "should have been delivered" clause. Actually, the result would not have been different if that clause applied.

■■ Accordingly, the question confronting this court, simply put, is whether the delivery in Honolulu was "in performance of the carrier's obligations." It is clear that under the "liberty clauses" of the charter party and the bill of lading, the defendants had the right, if reasonable, to discharge the cargo at any port and to be towed to that port. Such action would be reasonable if the cause of such action were the type that would be excludable under COGSA, as where negligence of a crew member is involved, but not attributable to the shipowner. *United States v. Wessel, Duval & Co.*, 115 F.Supp. 678 (S.D.N.Y. 1953). *See* G. Gilmore & C. Black, The Law of Admiralty §§ 3-40—3-42 (2d ed. 1975). Thus, if the shipowner were not personally at fault, the performance would be in furtherance of the agreement of the parties and, since delivery may, from the scant evidence before the court, only be shown to be July 26, 1968 or thereafter, the action would not be time-barred.

On the other hand, were the fault to have occurred with the privity and knowledge of the shipowner, this would constitute an unreasonable deviation which would deprive the shipowner of the protection of the one-year statute of limitations provision of COGSA. *United States v. Wessel, Duval & Co., supra; cf. Minex v. International Trading Company*, 303 F.Supp. 205 (E.D.Va. 1969). Accordingly, under either alternative, the claims for damage and loss to cargo are not time-barred.

### Indemnity Claims

■■ Actions for indemnity are not subject to the statute of limitations in COGSA. *Orient Mid-East Lines, Inc. v. A Shipment of Rice, supra; Francosteel Corporation v. S.S. Tien Cheung*, 375 F.Supp. 794 (S.D.N.Y.1973). However, the indemnity here is indemnity from loss, not indemnity from liability. *St. Paul Fire & Marine Insurance Company v. United States Lines Company*, 258 F.2d 374 (2d Cir. 1958), *cert. denied*, 359 U.S. 910, 79 S.Ct. 587, 3 L.Ed.2d 574 (1959); 3 Moore, Federal Practice ¶ 14.08 (2d ed. 1974).

Accordingly, the claim for indemnity does not accrue until payment has been made. *States Steamship Company v. American Smelting & Refining Co.*, 339 F.2d 66, 70 (9th Cir. 1965). Plaintiff has neither alleged nor proven payment. Therefore, the action for indemnity must be dismissed.

### Fire Exemptions

■ Under Section 1304(2)(b) of COGSA, a shipowner is not liable for damage or loss to cargo caused by fire "unless caused by the actual fault or privity of the carrier . . . ." Likewise, under the Limitation of Vessel Owner's Liability Act, 46 U.S.C. § 182,

no owner is liable for loss or damage to cargo caused by fire "unless such fire is caused by the design or neglect of such owner . . . ." The phrases "design and neglect" and "fault or privity" have been held to have essentially the same meaning. *Asbestos Corporation, Ltd. v. Compagnie de Navigation Fraissinet et Cyprien Fabre,* 480 F.2d 669 (2d Cir. 1973). In that case, the Court of Appeals also held that:

> "[A]n inexcusable condition of unseaworthiness of a vessel, which in fact *causes the damage*—either by starting a fire or by preventing its extinguishment—will exclude the shipowners from the exemption of the Fire Statute and COGSA." *Id.* at 672.

It is established that a condition of unseaworthiness may exist due to an inadequate crew, either in number, *Waldron v. Moore-McCormack Lines, Inc.,* 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967), or in competence, *Orient Mid-East Lines, Inc. v. A. Shipment of Rice, supra; Keen v. Overseas Tankship Corp.,* 194 F.2d 515 (2d Cir.), *cert. denied,* 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952), *cf. Boudoin v. Lykes Brothers Steamship Company, Inc.,* 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955).

In the instant case the crew was both inadequate in number to handle an emergency fire situation and inadequately trained in this regard. The Chief Officer, who is theoretically in charge of fire-fighting responsibilities and training, had only a Greek junior license. When he left the ship prior to the beginning of the voyage in question, he was replaced, not by a new Chief Officer, but by the second officer who himself had merely a Greek bosun's license. The chief engineer carried a Liberian first assistant engineer's license. The ship lacked one wiper and a carpenter. Even the complete crew complement was low for a vessel of this type. The crew totalled only 23, when there was evidence presented that 34 was an absolute minimum for safety. The captain was forced to stand deck watches.

Further, the training was inadequate. The fireman who initially caused the fire did not even know that the ship was equipped with a steam smothering device. Drills were sporadic and training insufficient by the captain's own description. It took ten minutes even to inform the captain that there was a fire in the boiler room. Finally, the captain admits that the crew panicked when the fire broke out.

■■ On the basis of all this I find that the ship was unseaworthy because the crew was inadequate to handle a fire emergency. This unseaworthiness is directly attributable to Maritime, the managing agent, which exercised full authority on hiring and firing, and on establishing and providing the crew complement, as well as promulgating safety procedures. However, a shipowner may not escape liability simply by delegating its managerial functions to an agent, as the duty to provide a seaworthy ship is a nondelegable duty. *Federazione Italiana Dei Corsorzi Agrari v. Mandask Compania de Vapores,* 388 F.2d 434 (2d Cir.), *cert. denied,* 383 U.S. 828, 89 S.Ct. 92, 21 L.Ed.2d 99 (1968). *See* G. Gilmore & C. Black, The Law of Admiralty § 3–27 (2d ed. 1975). Accordingly, Atlantic is liable for the damage and loss to Cerro's cargo caused by the fire and subsequent frustration of the voyage.

■ I expressly find that the ship was not unseaworthy because of the positioning of the alternative valve of the steam smothering system. The position complied both with good sense and with the regulations of the Safety of Life at Sea Convention (SOLAS). It is only in hindsight, and probably due to the failure of the inadequately trained crew to take certain basic fire-fighting precautions, such as closing the hatches, that the valve became unreachable. In any case, the evidence shows that steam smothering was for use in bilge fires

568

and would not have materially aided the combatting of this fire even if employed.

### Liability of Maritime

 It is clear that an agent is not covered by the limitations of COGSA available to a carrier, and that an agent may be fully liable for its acts of negligence. *Robert C. Herd & Co., Inc. v. Krawill Machinery Corporation*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). All of the cases cited by defendants in an attempt to prove Maritime an improper party are not on point. Those cases deal with liability of agents under agreements for carriage. The complaint here alleges breach of the agreements only against Atlantic. It charges both defendants, however, with negligence. The court finds that Maritime, in its failure to provide a proper crew for the North America, and its failure to properly counsel in fire protection once it had assumed this managerial function, was negligent, and that its negligence proximately caused the loss and damage to Cerro's cargo. Accordingly, both defendants are jointly and severally liable.

### Limitation of Liability

Atlantic seeks limitation of liability pursuant to 46 U.S.C. §§ 181–88. It is clear that limitation of liability for loss can be granted only if the loss occurred "without the privity or knowledge of [the] owner . . . ." 46 U.S.C. § 183(a). *Commercial Molasses Corporation v. New York Tank Barge Corporation*, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941); *Flanagan v. The H. F. Gilligan,* 170 F.Supp. 217 (S.D.N. Y.1959). Under the findings that I have made, no limitation can be granted in this case.

Accordingly, defendants are liable for damage and loss to cargo. The claim for indemnity for salvage is dismissed. Counsel shall report to the court within fifteen days of the date of this order as to the disposition of the damage claim.

So ordered.