**BUNGE EDIBLE OIL CORPORATION**

v.

**M/V TORM RASK and M/V FORT STEELE, et al.**

**Civ. A. No. 89–5514.**

United States District Court, E.D. Louisiana.

Jan. 15, 1991.

Francis A. Courtenay, Jr., Donald J. Volpi, Jr., Courtenay, Forstall, Guilbault, Hunter & Fontona, New Orleans, La., for plaintiff.

James L. Schupp, Jr., Terriberry, Carroll & Yancey, New Orleans, La., James H. Roussel, Michael L. Armitage, Stephanie G.

McShane, Phelps Dunbar, New Orleans, La., Conrad S.P. Williams, III, New Orleans, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court are three motions. Defendant Dampskibsselskabet Torm (Dampsk. Torm), owner of the M/V TORM RASK, and the Canadian Pacific defendants move for a summary judgment that the cargo claim of Bunge Edible Oil Corporation (Bunge) against the defendants is barred by the time limitation period provided in COGSA. The Canadian Pacific defendants also move for an order staying this lawsuit pending arbitration pursuant to a provision of the charter agreement between one of the Canadian Pacific companies and Dampsk. Torm. For the reasons that follow, the motion for summary judgment is GRANTED in part and the motion to compel arbitration is DENIED.

## I. MOTION FOR SUMMARY JUDGMENT

### A. Statute of Limitations

■ This motion presents a question never before considered in the Fifth Circuit: Does the one year limitation period of COGSA apply although a deviation in the cargo shipment occurred?

Bunge brings this suit as a shipper of cargo for damages that it says occurred while the cargo, a shipment of palm oil, was in transit to New Orleans, Louisiana. Bunge had a contract of carriage with Canadian Pacific (Bermuda) Ltd. (CPB). The bill of lading issued by CPB does not bear the name Canadian Pacific (Bermuda) Ltd. Instead, it names a sister company, Canadian Pacific Steamships London. The bill of lading reflects that the palm oil was received at Gudang, Johore in apparent good order and condition, and that the port of destination is either New York or New Orleans.

Both Bunge, the shipper, and Dampsk. Torm, the vessel owner, charge that, at the direction of CPB, the Torm Rask docked instead in Rotterdam and the palm oil was discharged into a shoreside tank; it was then pumped from the tank to the M/V Steele, a vessel owned and operated by another of the Canadian Pacific defendants. CPB, they further contend, then carried the palm oil to Reserve, Louisiana and pumped it into Barge MMI–307 on or about October 3, 1988. Bunge claims that surveyors' tests of the palm oil after delivery revealed that the quality of the palm oil had diminished to a level unacceptable to its consignees. According to Bunge, the surveyors at Reserve concluded that the diminished quality of the palm oil resulted from contamination by moisture and improper overheating of the cargo while en route from Gudang to Reserve. Bunge notified the Canadian Pacific defendants of its claim for damages to the cargo.

Thereafter, Transatlantic Marine Claims Agency (TMCA), handling Bunge's claim for cargo damages, made repeated written requests to Canadian Pacific Bulkship Service, Ltd. and Canadian Pacific Steamship for information concerning performance of the contract of carriage and the identity of the Canadian Pacific company involved. The exhibits of record show that Canadian Pacific was far from diligent or cooperative in its responses. Despite the fact that Bunge made diligent efforts to get information from Canadian Pacific and to engage Canadian Pacific in settlement discussions, passage of one year's time since delivery of the palm oil, and the one year limitation period set forth in COGSA, drew near.

To prevent Bunge's claim from becoming time-barred, TMCA sought an extension of time from Canadian Pacific. Canadian Pacific responded, agreeing to an extension, subject to a similar agreement by Dampsk. Torm.[1] TMCA continued to ask Canadian Pacific for information and kept trying to start settlement talks. On December 8, 1989 Canadian Pacific told TMCA that be-

---

1. In their response to Bunge's request for an extension of time, the Canadian Pacific defendants stated "We hereby grant a time extension up to and including January 1, 1990 without prejudice on behalf of charterers subject to owners granting similar."

cause they had not obtained an extension from Dampsk. Torm, Canadian Pacific considered the claim time-barred. Six days later, on December 14, 1989, TMCA obtained an extension of suit from Dampsk. Torm conditioned on a similar agreement by Canadian Pacific.

Defendants argue that no extension of time was ever granted and that, therefore, Bunge's cargo claim is time-barred by section 3(6) of the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1303(6). Bunge counters that COGSA's limitation period is not applicable. When the Canadian Pacific carrier discharged the palm oil at Rotterdam into a shoreside tank and then reloaded it aboard the M/V FORT STEELE, Bunge urges, the carrier committed a *per se* deviation from the contract of carriage. Bunge concludes that the effect of such an unreasonable deviation is to abrogate the terms of the contract of carriage and to block the carrier from invoking any defense otherwise permitted under COGSA. Thus, according to Bunge, neither the Canadian Pacific carrier nor any of the other defendants[2] can avail themselves of the COGSA time limitation period. The Court disagrees.

Bunge relies on a series of New York district court cases[3] in support of its argument. These district court cases indeed concluded that a deviation, such as the one Bunge points to here, deprives the deviating carrier of the COGSA time limitation defense. *See e.g., Italia Di Nav. v. Hermes I*, 1984 A.M.C. 485, 564 F.Supp. 492 (S.D.N.Y.1983), aff'd 724 F.2d 21 (2 Cir. 1983); *Cerro Sales Corp. v. Atlantic Marine Enterprises*, 403 F.Supp. 562 (S.D.N.Y.1975). But because the Court concludes that these cases were incorrectly decided, and are flawed doctrinally, the Court does not find them of any precedential value or guidance.

**2.** COGSA does only apply by its terms to carriers.

**3.** Among the cases cited by Bunge is also a district court decision from the Southern District of Florida. *Allstate Ins. Co. v. International Shipping Corp.*, 1982 A.M.C. 1763 (S.D. Fla.1981) (carrier's actions constituted an unreasonable

These decisions seem to have been based on an incorrect interpretation or application of precedent. *United States v. Wessel, Duval & Co.*, 115 F.Supp. 678 (S.D.N.Y. 1953), the district court case relied on in this series of cases as support for the conclusion that a deviation voids the applicability of the limitation period provided in COGSA, does not support such a conclusion. *Cerro*, 403 F.Supp. at 566, *Italia Di Nav.*, 1984 A.M.C. at 487, 564 F.Supp. 492. To the contrary, *Wessel, Duval* stands only for the proposition that an unreasonable deviation attributable to a bareboat charterer sued for cargo damage by a time charterer may void the contractual time limitation period contained in the Charter Party. *Wessel, Duval*, 115 F.Supp. at 683.

In *Wessel, Duval*, a time charterer, the United States, sued a bareboat charterer, Wessel Duval, for cargo damage caused by a deviation from the Charter Party attributable to the bareboat charterer. *Id.* The time charterer argued that the "conduct of ... the bareboat charterer ... was such to deprive it of the benefits of the one year limitation in [COGSA]", which the court held had been incorporated by reference into the Charter Party. *Id.* The time charterer argued that the introductory words "in any event" found in the COGSA's time limitation text mandated that the limitation period apply in all cases, even if a deviation had occurred. Concluding that these seemingly clear and direct words did not preserve the time limitation defense in the face of a deviation, the court explained:

> Those words "in any event" may well result in the preserving this *statutory limitation* even though the ship has been guilty of a deviation. Here, however, the Act has effect only as an agreement of the parties; if the agreement that, unless suit is brought within one year, the ship shall be discharged goes by the board when the ship is guilty of a

deviation, nullifying any limitations available to it under COGSA.) Because this case relies on the same line of New York district court decisions as authority for its conclusion, it is unnecessary for the Court to treat it because it is implicitly included in the Court's discussion of the New York cases. *Id.* at 1769.

deviation, the agreement that unless suit is so brought the ship shall be discharged "in any event" will go by the board too. The words "in any event" have no greater sanctity than the rest of the clause.

*Id.* at 683–684. (emphasis added)

*Wessel, Duval's* conclusion that a deviation bars one's assertion of the COGSA time limitation provision in a charter party clearly rests on the fact that the limitation provision was applicable only as a provision of the contract; if its application had been mandated by statute, as is the case here, the court noted that the words "in any event" would preserve the statutory limit even if a carrier were guilty of a deviation. *Id.*

Still another case out of the New York district court the same year as *Wessel, Duval* supports the conclusion that a deviation will not bar defensive use of the COGSA one year limitation period. *Jones v. The Flying Clipper,* 116 F.Supp. 386 (S.D. N.Y.1953). It focuses our attention on the conceptual differences between defensive use of the $500 per package limitation and the time limitation period when a deviation has occurred. *The Flying Clipper* addressed the issue whether a deviation by the carrier would operate to nullify the COGSA $500 per package limitation defense of section 1304(5). *Id.* In its analysis the court distinguished two earlier decisions[4] which held that a deviation would not bar application of COGSA's one year limitation period. *Id.* at 389. The court did not find these decisions persuasive because "a time limitations clause raises other issues." *The Flying Clipper* also pointed out that:

... Judge Augustus N. Hand, writing for the [Second Circuit] Court of Appeals, in reference to the one year provision contained in the English Carriage of Goods by Sea Act, 1924, which like the United States Act, 1936, was based upon the Brussels Convention—Hague Rules, stated: "Nothing resembling a deviation has been shown to deprive the carrier of the benefit of the limitation."

*Id.* (citing *Switzerland General Ins. Co. v. Navigazione Libera Triestina, S.A.,* 91 F.2d 960, 963 (2 Cir.1944)).

In fact, the analysis of *The Flying Clipper* supports the conclusion that the time limitation defense is not trumped when a deviation occurs. In concluding that an unreasonable deviation would preclude a carrier's reliance on the COGSA per package limitation, *The Flying Clipper* correctly noted[5] that because a deviation by the carrier alters the fundamental risk allocation contemplated by the parties to the contract of carriage and the shipper in insuring the cargo, it necessarily nullifies the risk allocation reflected in a monetary limitation provision. *Id.* at 390. Thus, *The Flying Clipper* concluded that because COGSA's per package limitation of liability provision implicates the allocation of risk between the parties, a deviation by the carrier must deprive it of the protection afforded. *Id.* *The Flying Clipper* exposes the subtle conceptual difference between defensive use of the per package limitation and defensive use of the time limitation in the face of a shipment deviation; a difference which derives the result here. Since a relationship exists between a deviation which increases cargo risk and defensive use of the monetary limitation to a claim for damage to the cargo, it is theoretically

---

**4.** *See Singer Hosiery Mills v. Cunard White Star,* 1951 A.M.C. 988 (New York Municipal Court 1951); *Potter v. North German Lloyd,* 1943 A.M.C. 738 (N.D.Cal.1943).

**5.** The court stated:

A shipper has the right to assume that the carrier will not deviate and thereby subject the cargo to other than the known risks inherent in a normal route or underdeck stowage. The shipper protects himself by insurance commensurate with such calculated risks.

But when the carrier deviates and enters upon "a different venture from that contemplated," he exposes the cargo to unanticipated and additional risks against which [the shipper] has not protected himself.... To uphold the carrier's contention that the limitation of liability is absolute, regardless of a fundamental breach which goes to the very essence of its undertaking, would permit any carrier with recklessness to violate the terms of the bill of lading, knowing it cannot be called upon to pay more than $500 per package.

*Id.* at 390.

appropriate not to let the one who deviates to use the harsh monetary limits defense. But no such relationship exists between deviation and time limits within which to sue.

The COGSA time limitation period does not significantly bear on the allocation of cargo risk contemplated by the parties in negotiating the contract of carriage or by the shipper in procuring insurance. To the contrary, a time for suit limitation reflects only an estimation of a reasonable period in which to file suit. *Styling Plastics Co. v. Neptune Orient Lines, Ltd.*, 666 F.Supp. 1406, 1413 (N.D.Cal.1987) (deviation would not void COGSA time bar). It has no conceptual nexus with cargo risk allocation. COGSA's time for suit limitation, then, merely reflects Congress' estimation of a reasonable time in which a shipper or consignee must pursue one's remedies. *See* 79 Cong. Rec. 13341 (1935) ("The present law imposes a very limited restriction on the right to bring suits against the carrier for defaults of one sort or another. This enlarges the time within which a shipper who has suffered damage may bring suit against the carrier."). And so, this Court concludes that the cases Bunge invokes are conceptually incorrect.

Although the Fifth Circuit has not addressed this issue, it has held that a deviation voided the COGSA per package limitation, and has employed reasoning which supports the result this Court reaches. *Spartus Corp. v. The S/S Yafo*, 590 F.2d 1310, 1315–17 (5 Cir.1979). *Yafo* supports the conclusion that the COGSA time bar differs from the per package defense; the time limitation does not concern the allocation of risk between the carrier and the shipper, and, therefore, a deviation by the carrier ought not deprive the carrier of its benefit.

Moreover, *Yafo* noted that the language employed in section 1304(5)[6] could support the conclusion that the monetary liability limitation in COGSA mandated its application to all suits on contracts of carriage

regardless of deviation, but the court observed that such an interpretation was foreclosed by contrary precedent. *Id.* at 1317. That contrary precedent seemingly disregarded the statute's text because it was at odds with notions of risk allocation. The time for suit limitation contains similar language: "*In any event* the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. App. § 1303(6) (1970). Without the presence of a risk allocation problem, earlier cases which stray from the statutory text do not instruct or compel this Court not to remain faithful to the text. Thus, because the Court considers the time bar a Congressional mandate and because a time for suit limitation in this context does not relate to the extent to which cargo is put at risk, the Court holds that a carrier's deviation does not block the carrier's defensive assertion of the time limitation period of section 1303(6).

■ Suits against the noncarrier defendants are not governed by COGSA and, thus, are not covered by its time limits. 46 U.S.C.App. 1300 et seq. (1970). Therefore, the time bar has no effect on Bunge's suit against the noncarrier Canadian Pacific companies or against Dampsk. Torm. Dampsk. Torm. is not a carrier because the bill of lading was neither issued by it or on its behalf. *Pacific Employers Ins. v. M/V GLORIA*, 767 F.2d 229 (5 Cir.1985); *Assoc. Metals & Minerals Corp. v. S/S PROTORIA*, 1973 A.M.C. 2095 (5 Cir.1973); *Sunil Inds. v. THE OGDEN FRASER*, 1981 A.M.C. 2670 (S.D.N.Y.1981); *Demsey & Associates, Inc. v. Steamship Sea Star*, 321 F.Supp. 663 (S.D.N.Y.1970), *reversed in part on other grounds* 461 F.2d 1009. The same is not true, however, with regard to an *in rem* action against the vessel under COGSA; *Pioneer Import Corporation v. The Lafcomo*, 138 F.2d 907 (2 Cir.1943); Tetley, *Marine Cargo Claims* at 83 (2d

---

**6.** Section 1304(5) of the Act reads, "Neither the carrier nor the ship shall *in any event* be or become liable for *any* loss or damage to or in

connection with the transportation of goods in an amount exceeding $500 per package." 46 U.S.C.App. § 1304(5) (1970) (emphasis added).

Cir.1978). COGSA applies to the lien action against the ship for safe carriage. *Id.*

Consequently, unless the time limitation provision was waived or otherwise tolled, as Bunge contends, Bunge's suit against the carrier and the ship *in rem* is time-barred.

### B. Waiver of the COGSA Limitation Provision

██ Bunge next argues that defendants waived the COGSA time limit by granting Bunge an extension of time within which to sue. Defendants insist they granted no extension to Bunge because any agreement was subject to a condition that Bunge failed to fulfil. The Court finds that, although the defendants granted Bunge an extension of time and waived the COGSA one year limitation period, the waiver was, as they contend, subject to a condition that was not fulfilled and therefore without effect.

██ Although a carrier may waive the right to invoke the COGSA time limitation period, the terms of the waiver must be strictly construed. *United Fruit Company v. J.A. Folger,* 270 F.2d 666, 669 (5 Cir.1959); *General Electric Co. v. M/V Gediz,* 720 F.Supp. 29, 30 (S.D.N.Y.1989). The Court must therefore examine the terms of the agreement itself. There is no dispute that the Canadian Pacific interests, presumably CPB and some other Canadian Pacific company, made this response to Bunge's request for an extension: "We hereby grant a time extension up to and including January 1, 1990 without prejudice on behalf of charterers subject to owners granting similar." The words "subject to owners granting similar" make the carriers' agreement to extend conditional—a condition which suspends the agreement's operative effect until the condition is fulfilled. *See* La.Civ.Code Art. 1767 [7] (West 1990).

An agreement which is subject to a suspensive condition is not binding until the condition is fulfilled. *See* La.Civ.Code Art.

1767 (West 1990). And if an agreement which is subject to a suspensive condition does not provide a period of time in which the condition must be fulfilled, the condition may be fulfilled within a reasonable time. *See* La.Civ.Code Art. 1773. In this case, the charterers granted the extension on the condition that the vessel's owner would grant a similar extension. Thus, unless Bunge got such an agreement from the vessel within a reasonable time, the agreement to extend cannot be enforced.

Bunge did not seek or obtain a similar agreement from the vessel owner until over two months after the conditional grant by the Canadian Pacific interests and six weeks after the time for suit had passed. Moreover, it was only after receiving notice from the Canadian Pacific interests (that they considered the condition unfulfilled and the claim time-barred) that Bunge tried to obtain such an agreement. Thus, the Court finds that Bunge failed to fulfill the condition of the extension grant within a reasonable time, and that Bunge's suit against CPB, and any other Canadian Pacific defendant determined to be a carrier, is time-barred.

██ The same reasons apply to Dampsk. Torm. Dampsk. Torm's grant of extension was subject to the condition that Bunge obtain a similar grant from the charterers. The suspensive condition of Dampsk. Torm's agreement was never fulfilled. Before Dampsk. Torm ever indicated its agreement, the Canadian Pacific grant was dissolved or withdrawn. Bunge was unable, subsequent to obtaining the grant from Dampsk. Torm., to obtain a new extension from the Canadian Pacific charterers. Thus, Dampsk. Torm's grant of extension is not binding. Because the Court concludes that the grant is unenforceable due to its unfulfilled suspensive condition, the Court need not address whether it was also invalid because it was obtained after the period for suit had expired.

---

7. Because Admiralty or General Maritime Law provides no guidance in the area of general contract law, the Court will look to state law. *St. Hilaire Moye v. Henderson,* 496 F.2d 973, 980

(8 Cir.1974) ("admiralty courts may apply state law by express or implied reference when the federal law of admiralty is incomplete").

### C. Fraudulent Concealment

■ In a final effort to avoid application of COGSA's time bar, Bunge asserts that Canadian Pacific fraudulently concealed the identity of the carrier. Bunge contends that its delay in filing suit was caused by fraudulent concealment, and that, as a result, the Canadian Pacific defendants are estopped from invoking COGSA's limitation period to bar Bunge's suit. Bunge is incorrect.

■ While it is true that fraudulent concealment by a defendant will toll the statute of limitations if the plaintiff acts with reasonable diligence to discover the fraudulent conduct, *Pan Am Petroleum Co. v. Orr*, 319 F.2d 612, 614 (5 Cir.1963), Bunge does not attribute to the Canadian Pacific defendants acts sufficient to constitute fraudulent concealment. A plaintiff claiming that fraudulent concealment tolls a limitation period must establish that its failure to timely act "was the result of affirmative conduct by the defendant." *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499 (9 Cir.1988), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989). Passive concealment of information does not constitute fraudulent concealment unless the defendant owes a fiduciary duty to disclose information to the plaintiff. *Id.* Neither silence or mere inaction constitutes fraudulent concealment. *Gomez v. Great Lakes Steel Corp.*, 803 F.2d 250 (6 Cir. 1986). Moreover, not every act of active concealment will toll a limitation period; the concealment must concern a crucial element or defense. *Hohri v. United States*, 782 F.2d 227 (D.C.Cir.1986), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51.

Bunge only attributes to the Canadian Pacific defendants passive concealment of, or mere inaction regarding the true identity of the Canadian Pacific carrier. That does not toll COGSA's one year time period. *Conmar*, 858 F.2d at 505. Further, lack of knowledge of the identity of the particular Canadian Pacific company did not prevent Bunge from being aware of its claim against the Canadian Pacific interests or keep it from filing suit against at least the known Canadian Pacific participants to protect its rights. *Hohri*, 782 F.2d at 249. (It seems as though Bunge could certainly have filed suit against some of the Canadian Pacific defendants timely, and then amended later to include other parties).

The Court must conclude on this record that fraudulent concealment did not toll the COGSA limitations period. Section 1303(6) time bars Bunge's action against the vessels *in rem* and against the Canadian Pacific carrier. Canadian Pacific admits that CPB entered into the contract of carriage with Bunge, and Bunge does not refute this fact. Thus, the Court grants defendants' motion with regard to the vessels, the TORM RASK and the FORT STEELE, and the undisputed carrier, CPB. However, the Court denies the motion insofar as it applies to Dampsk. Torm. and the remaining Canadian Pacific defendants.

### II. MOTION TO COMPEL ARBITRATION

■ The Court questions the merit of Canadian Pacific's contention that any of the disputes involved in this litigation, other than disputes between it and Dampsk. Torm, "arise out of" the charter party between it and Dampsk. Torm.[8] *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5 Cir.1987) ("ordinary contract principles determine who is bound by a written arbitration agreement"). However, the Court need not consider this point because Canadian Pacific has waived its right to arbitration over any dispute involved in this litigation; it actively participated in this litigation and failed to move to compel arbitration until shortly before the scheduled trial.

This litigation was started on December 29, 1989. Since then, the Canadian Pacific defendants have cross-claimed against Dampsk. Torm and actively participated in discovery. On December 14, 1990, nearly a

---

**8.** The Court is not convinced the disputes between third parties and one of the parties to a charter party containing an arbitration clause can be said to "arise out of" the charter party. *Valero*, 813 F.2d at 64.

full year later, the Canadian Pacific defendants moved to compel arbitration. The motion was set for consideration on January 9, 1991, less than a month before the scheduled trial date.

Even though a strong federal policy favors arbitration, the right to compel arbitration may be waived. *Frye v. Paine, Webber, Jackson & Curtis, Inc.,* 877 F.2d 396 (5 Cir.1989). A court will find such a waiver when the party seeking to invoke arbitration actively participates in litigation, or delays in moving to compel arbitration to the prejudice of the other parties. *Id.* at 399; *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1158–59 (5 Cir.1986); *Miller Brewing Co. v. Fort Worth Distributing Co.,* 781 F.2d 494, 497 (5 Cir.1986).

The Court finds that the active participation of Canadian Pacific in the litigation, its delay in moving to compel arbitration, and the prejudice that would result to the other parties should arbitration be ordered less than a month before trial of this matter, compel the denial of Canadian Pacific's motion for arbitration.

Accordingly, defendants' motion for summary judgment is GRANTED insofar as it requires dismissal of Bunge's claims against the two vessels *in rem* and the carrier, CPB (Canadian Pacific (Bermuda) Ltd.), as time-barred under COGSA; and DENIED with regard to the remaining Canadian Pacific defendants and Dampsk. Torm *in personam.* Canadian Pacific's motion to compel arbitration is also DENIED.